ISAAC ALTMAN, Appellant, *v.* NATHAN FINKEL et al., Respondents.

First Department, January 26, 1945.

*Samuel Komoroff* of counsel (*Forrest S. Chilton* with him on the brief; *Samuel Komoroff,* attorney,) for appellant.

*Edward J. Gould* of counsel (*Jacob Greenwald* with him on the brief; *Edward J. Gould,* attorney), for respondents.

CALLAHAN, J. This is an action by a judgment creditor in aid of execution to compel discovery of property belonging to the judgment debtor, and to produce satisfaction of plaintiff's judgment. (Civ. Prac. Act, § 1189.) Damages for fraud based on the concealment of assets are also sought. The trial court rendered judgment for the defendants after a trial of the issues.

Two questions are presented on this appeal. The first concerns the correctness of the trial court's decision that certain properties of Nathan Finkel were not concealed in fraud of plaintiff, a judgment creditor whose claim arose subsequent to the transfer of said properties. The second question has to do with the defense of the Statute of Limitations.

Determination of the first question should depend upon whether the proof established by a fair preponderance thereof an actual intent on the part of defendants to defraud present or future creditors.

Section 276 of the Debtor and Creditor Law provides: " Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Even prior to the adoption of section 276, the existence of an actual intent to defraud present or future creditors made a conveyance of property with that intent void as to such creditors. (Rev. Stat. of N. Y., part II, ch. VII, tit. III; *Case v. Phelps,* 39 N. Y. 164; *Young v. Heermans,* 66 N. Y. 374; *Dewey et al.* v. *Moyer et al.,* 72 N. Y. 70; *Carr et al.* v. *Breese et al.,* 81 N. Y. 584; *Billings* v. *Russell et al.,* 101 N. Y. 226.) The rule was established by these earlier authorities that the question of fraudulent intent was a question of fact and not of law.

Actual intent to defraud, or fraud in fact, like any other fact, may be shown by circumstantial evidence.

In the present record we find ample proof of many facts and circumstances all of which were " badges " of actual fraudulent intent. Prior to 1929, the judgment debtor, Nathan Finkel, had held himself out as the owner of a certain paint business conducted in New York City. He held in his own name title to one parcel of real estate. He also owned all the stock of a corporation known as Paulena Realty Corporation which, in turn, owned three parcels of real estate in fee, a mortgage on another parcel, and several leaseholds of still other parcels. In 1929 all of these properties, other than the leaseholds, were transferred to a corporation (defendant Rosalena Realty Corporation), the stock of which was issued to Nathan Finkel's wife, Rose Finkel. A certificate of doing business was filed by Rose Finkel in the County Clerk's office, covering the paint business. Rose Finkel gave no consideration for the transfers, nor for the issuance of the stock to her. At the time of the transfers in 1929, Nathan Finkel had numerous creditors. Actions had been or were about to be commenced against him on several of these debts. At least three judgments were rendered against him at or about that time. Though these judgments were for small amounts, two of them were never satisfied.

Plaintiff, however, was not a creditor of Nathan Finkel in 1929. The transaction out of which plaintiff's judgment arose was entered into in 1931. It involved the leasing of various properties by plaintiff to a corporation of which Nathan Finkel owned 49% of the stock. Nathan Finkel guaranteed performance of this lease by the tenant, and it was on this guarantee that plaintiff recovered a judgment against him in May, 1932.

In 1940, the defendant 142nd Street Realty Corporation was formed, and its stock was likewise issued to Rose Finkel. This new company purchased several additional parcels of real estate with moneys furnished by Rosalena Realty Corporation.

The trial court decided that, because at the time of the transfers made in 1929, plaintiff was not a creditor of Nathan Finkel, and there was no proof that any indebtedness to plaintiff was then contemplated, the transfers did not constitute a fraud on plaintiff. In this we deem that the trial court erred. Although plaintiff's judgment was obtained subsequent to the transfers, the facts disclosed in the record compel the conclusion that there was an actual intent by Nathan Finkel and his wife to conceal Nathan Finkel's assets from present and future creditors by means of these transfers. Some of the circum-

stances evidencing an actual fraudulent intent as to creditors were the formation of Rosalena Realty Corporation and the transfer of the properties to it, instead of a direct transfer to Rose Finkel; false statements made by the debtor and his wife in supplementary proceedings; complete domination and control by Nathan Finkel of the properties transferred, after transfer as before; the fact that Nathan Finkel acted as officer of Rosalena and took charge of management, alterations and repairs without compensation; use of funds of the Rosalena Corporation to pay Nathan Finkel's personal obligations; the guarantee by Nathan Finkel of Rosalena's obligations; statements by both parties concerning the nature of their business activities, which statements indicated that Nathan Finkel was in fact carrying on the paint business. These and many other circumstances were established, in addition to proof of elements of constructive fraud, to wit: the existence of debts owed by Nathan Finkel at the time of the transfers, his insolvency after the transfers, and the absence of consideration.

As against plaintiff's proof, defendant Nathan Finkel claimed, in effect, that the transfers had been made by him to his wife because she always owned the business and had helped build up the investments. In addition, he attempted to attack collaterally the judgment which plaintiff had recovered on the guarantee, which attack, of course, should not have been permitted.

Rose Finkel failed to testify as a witness upon the present trial. Although her denials in supplementary proceedings of any intention to defraud her husband's creditors were read in evidence, these denials were entitled to little credence, in view of the facts disclosed in this case and of her failure to submit herself as a witness.

At about the time of the transfers, the judgment debtor was engaged in speculative transactions, including other leaseholds acquired from plaintiff. He defaulted under these leases in 1930. Then in 1931 the lease on which his guarantee was given was signed.

Under all of these circumstances, we think that the evidence compels a finding that the transfer by Nathan Finkel of his property to his wife was for the purpose of protecting him from the risks of his speculative enterprises, and was made with an actual intent to defraud present and future creditors. That this was a continuing arrangement is fully established by the proof in the case. We, therefore, find that the plaintiff was entitled to prevail, unless the defense of the Statute of Limitations is an adequate one.

The complaint contains three causes of action. The first and third are in the nature of creditors' bills in aid of execution. The second cause of action is one at law for damages for fraud based on concealment, of assets.

It appears that, although plaintiff's judgment for breach of the guarantee was obtained on May 31, 1932, no execution was issued on such judgment until October, 1942. This execution was returned unsatisfied on October 15, 1942, and the present action was commenced on October 30, 1942. The answer pleaded the Statute of Limitations as to the first and second causes. of action. Respondent now urges (although the decision at Special Term was not based on such ground) that, in any event, the first cause of action is barred by the Statute of Limitations.

If the gravamen of the first cause of action was to set aside transfers of property for constructive fraud under article 10 of the Debtor and Creditor Law, such a cause would appear to be barred by the Statute of Limitations (Civ. Prac. Act, § 53) ten years after the transfers. (*Buttles* v. *Smith,* 281 N. Y. 226, 236.) But we find that this cause of action is not one to set aside transfers of property. It is a suit in aid of execution to discover assets for the purpose of producing satisfaction of plaintiff's judgment (Civ. Prac. Act, § 1189).

It was said in *Buttles* v. *Smith* (*supra*) that, because an action may now be brought under article 10 of the Debtor and Creditor Law without first procuring judgment on the debt, the time to sue under the statute is not to be deemed extended by proceedings had in obtaining a preliminary judgment. Respondents reason that, as plaintiff might have issued his execution in the present case any time after entry of his judgment in 1932, his time to bring this suit should not be extended by his delay until 1942 in issuing such execution. We think that the answer to this argument is that a statute of limitations runs from the time that the cause of action sued on accrues, and, where a new cause of action arises in aid of an execution duly issued and returned unsatisfied, the statutory period of limitation runs from the date of such return. This distinction was, in effect, recognized in *Buttles* v. *Smith* (*supra*) where those causes of action in which the return of execution was a necessary preliminary step were held not to be barred.

The present action is not one brought under article 10 of the Debtor and Creditor Law, although section 276 contained in said article states the rule of law applicable to the rights of a subsequent creditor. No remedy afforded solely by the Debtor and Creditor Law is being availed of by plaintiff herein. A

cause of action in aid of execution is one created by an entirely different statute (Civ. Prac. Act, § 1189), and is thus a separate statutory remedy.

The second cause of action pleaded in the present complaint being one at law for damages based on defendants' actual fraud, such cause of action did not accrue until the discovery of the fraud. (*Nasaba Corp.* v. *Harfred Realty Corp.*, 287 N. Y. 290.) The complaint alleges that the fraud was not discovered until 1942, when Finkel was examined in supplementary proceedings, and we think that the proof supports this allegation. Accordingly, we hold that the plaintiff's right to recover is not barred by any Statute of Limitations.

In view of the fact that recovery of equitable relief under the first and third causes of action may obviate any basis for an award of damages, the judgment to be entered may be limited to the equitable remedies sought.

The judgment appealed from should be reversed, with costs, and judgment directed for the plaintiff as demanded in the complaint, with costs.

MARTIN, P. J., UNTERMYER, DORE and COHN, JJ., concur.

Judgment unanimously reversed, with costs, and judgment directed in favor of the plaintiff as demanded in the complaint, with costs. Settle order on notice. [See 269 App. Div. 745.]