**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John L. ESTES, Jr., et al., Defendants-Appellants.**

**No. 71–1977**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Oct. 13, 1971.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Allen Glenn, Abilene, Tex., for defendants-appellants.

Seagal V. Wheatley, U. S. Atty., El Paso, Tex., Johnnie M. Walters, Asst. Atty. Gen., Morris B. Silverstein, Dept. of Justice, Tax Div., Washington, D. C., for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

This appeal arises from the Government's efforts to recoup a small portion of the millions of dollars in taxes owed and never paid by Billie Sol Estes and his wife, Patsy D. Estes ("the taxpayers"). The taxpayers filed joint returns for each of the calendar years 1959, 1960, and 1961. The Tax Court determined that Patsy D. Estes was liable for tax deficiencies for those years of more than 9 million dollars. Patsy D. Estes v. C. I. R., No. 245–64 (1959 and 1960; $172,625.17 and $2,588,266.66, respectively); Patsy D. Estes v. C. I. R., No. 138–64 (1961); $6,668,848.41). In a bankruptcy proceeding in federal district court, Billie Sol Estes was held liable to the United States for the tax years 1959, 1960, and 1961 for more than 12 million dollars. In the matter of Billie Sol Estes, Bankruptcy Nos. 299 and 308 (U.S.D.C., W.D.Tex., Pecos Division).

As a result of the bankruptcy proceedings Billie Sol Estes paid the Government about $750,000 of the amount he owed. In addition, a stipulation and order was entered in the bankruptcy court which, *inter alia*, delivered to Patsy Estes as her separate property all the stock of Pecos Transit Mix, Inc. ("PTM"), a Texas corporation. The stipulation and order recited that the stock was delivered to Patsy Estes clear of the claims of any creditors of the

bankrupt estates of Billie Sol Estes, Estes Brothers (a partnership consisting of Billie Sol Estes and his brother Bobby Frank Estes), and Bobby Frank Estes. The Government was a party to the bankruptcy proceedings, but not to the stipulation which delivered the PTM stock to Patsy Estes. Certain real estate was also delivered to Billie Sol and Patsy Estes because it comprised their homestead, exempt from general creditors under Texas law.

Soon after the bankruptcy proceedings had been completed, the taxpayers transferred to a trust created by them the homestead real estate and the PTM stock; the taxpayers' children are its beneficiaries. The appellants herein are the trustees of that trust. The taxpayers received no consideration for the transfer into trust. Nor did the taxpayers have other property in Texas sufficient to satisfy the tax liabilities owed by them to the Government. On August 1, 1963, the Government filed formal notices of deficiency and tax liens—after the transfers into trust had been completed, but long after the indebtedness to the Government had arisen.

The Government brought these consolidated actions to foreclose federal tax liens against the Estes homestead and the PTM stock. See Int.Rev.Code §§ 7401–7403. The Government also sought a deficiency judgment against the trustees for any difference between the fair market value of the trust property at the time it was placed in trust and any proceeds which might be realized from the property upon foreclosure. These suits were based on transferee assessments against appellants here, as transferees without consideration of property belonging to the taxpayer. The district court entered judgment against the appellants for $215,335, the value of the properties in question when transferred to the trust; ordered foreclosure of the Government's tax liens against those properties; and granted the Government's request for a deficiency judgment against appellants for the difference between the judgment and the fore-closure proceeds. Appellants' motion for amended findings and for a new trial was denied, and they took this appeal from the judgment below.

The appellants raise three questions on this appeal. They question, first, the propriety of allowing the Government to proceed against the Estes homestead when transferee liability is governed by state law and the homestead is exempt from creditors' claims under state law. Second, the appellants contend that Patsy D. Estes was given possession of the PTM stock as her separate property free and clear of creditors' claims and that the stock should therefore be beyond the Government's reach in the hands of transferees as it allegedly would be beyond the Government's reach in Mrs. Estes's own possession. Finally, the appellants argue that they should not be liable for any difference between the fair market value of the property when transferred to them and the proceeds which the property brings upon foreclosure sale.

■■ We affirm the district court's holding that the Government had the right to follow the homestead and the PTM stock into the appellants' hands. The PTM stock was given to Patsy Estes as her separate property in connection with her husband's bankruptcy proceedings, but Patsy Estes is individually liable to the government for unpaid taxes. Thus the terms of the stipulation by no means preclude satisfaction of the Government's claims from Patsy Estes's separate property. United States v. Mitchell, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (June 7, 1971). Moreover, the stipulation delivered the stock to Patsy Estes free of the claims of creditors of the *bankrupt* estates. Patsy Estes's own estate, and the claims of her creditors, were not among those before the court in the bankruptcy proceedings. Since the terms of the stipulation do not bar the Government from proceeding against Patsy Estes as owner of the PTM stock, we need not decide whether the Government was bound by the stipulation. The Government could proceed

against the stock had it remained in the hands of Mrs. Estes and is now entitled to proceed against the stock in the possession of the appellants. The appellants gave no consideration for the transfer by Mrs. Estes at a time when she owed the Government a huge amount of money and had no other assets which might satisfy her indebtedness.

The Government's right to follow the Estes homestead is only slightly less apparent. The parties agree that the precise nature and extent of a transferee's liability are determined by state law—in this case, the law of Texas. C. I. R. v. Stern, 1958, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126. Applying Texas law, the district court held that the taxpayers' transfer of their homestead was in fraud of the Government. It therefore allowed the Government to assert transferee liability against the appellants. Appellants argue, however, that Texas law does not consider a homestead conveyance without consideration to be in fraud of creditors since the property cannot be reached by creditors even in the hands of the debtor. But a transfer of exempt homestead property is not fraudulent as to general creditors under Texas law only because the transfer deprives the creditors of nothing to which they could look for satisfaction of their claims. The property is exempt from the outset.

■ This reasoning has no applicability to the Government. Even though the homestead might be exempt under state law from the claims of private creditors, "[n]o provision of a state law may exempt property or rights to property from levy for the collection of" federal taxes owed. Treas.Reg. on Proc. and Admin. § 301.6334–1(c). See United States v. Bess, 1958, 357 U.S. 51, 56–57, 78 S.Ct. 1054, 2 L.Ed.2d 1135. Indeed, this Court has specifically held that the Texas homestead exemption does not erect a barrier around a taxpayer's home sturdy enough to keep out the Commissioner of Internal Revenue.

Shambaugh v. Scofield, 5 Cir. 1943, 132 F.2d 345. It follows, then, that the transfer of the Estes homestead without consideration deprived the Government of an asset of value to it. The Government has aptly described the scenario in its brief:

> " * * * [A]ll elements for imposing transferee liability against appellants existed here. At the time of the transfer, taxpayers owed—and for that matter they still owe—the Government an enormous tax liability for tax years prior thereto, and the Government has exhausted all reasonable efforts to collect this from them; the homestead plainly was of value, both to taxpayers and, in their hands, to the Government; taxpayers transferred the homestead, without receiving anything in return, to appellants, who now contend that this put the homestead beyond the Government's reach; and taxpayers were insolvent following the transfer."

The court below correctly held that the appellants are liable as transferees with respect to the homestead. The government must be allowed to foreclose its liens on the property.

Turning now to the question of the extent of the appellants' liability, we must confess our puzzlement at the Government's posture in this Court. On the one hand, the Government would have us uphold the district court's judgment against the appellants for *any* difference between the fair market value of the trust property at the time of transfer and its value upon foreclosure sale. On the other hand, the Government tells us that in Texas, "[t]he theory on which creditors recover is that the property, as to them, is held in trust by the transferee", citing 26 Tex.Jur., Fraudulent Conveyances, § 109. The Government points to no case in which the Texas courts have held transferees liable for a deficiency judgment of the kind sought here, and our own research reveals none. We suppose that many kinds of declines in value would not, under the Govern-

ment's trust theory, be chargeable to the transferees as "trustees" for the Government. To cite but a single example, it may be that the PTM stock is now worth only half what it was worth when transferred to the appellants. But it is surely possible—we do not know—that any decline in value may simply reflect adverse market conditions and cannot be attributed to dereliction of the appellants' duties as "trustees." Thus the Government's theory for upholding a deficiency judgment does not square with the actual language of the judgment,[1] unconditionally holding the appellants to account for the difference between the fair market value at the time of transfer and the proceeds realized on foreclosure.

To add to the confusion, the Government says that the extent of any deficiency judgment was a question not before the lower court and not before this Court. "Whether and to what extent appellants would be liable for the deficiency," the Government assures us, are issues to be settled "if and when a deficiency occurs." Of course we cannot remit the appellants to the good intentions of the Government so long as the appellants are looking into the teeth of the lower court's unconditional deficiency judgment against them. Since the Government concedes that this open question of state law is best resolved when the circumstances requiring its resolution are clear, we have decided to vacate Paragraph Number Four (4) of the judgment of the district court, and Paragraph Number 18 of the conclusions of law, reprinted in footnote 1 of this opinion. Whether the appellants would be liable for any deficiency and the extent of their liability are questions which

cannot be decided properly in the absence of thorough briefing by the parties in light of the actual facts as they develop. Indeed, no deficiency having yet arisen, the case comes here so devoid of concreteness that we should have serious doubts of our own jurisdiction, as well as that of the lower court, to rule upon this question at this time.

For the reasons stated, the judgment of the district court will be affirmed, except for Paragraph Four (4) of the judgment which is vacated.

---

1. "4. That the United States have and recover a deficiency judgment against John L. Estes, Jr., Patsy D. Estes and Diehlman Word Estes, Sr., Trustees, in the amount of the difference between the aforementioned indebtedness asserted against said trustees and the amount paid to the United States as a result of the foreclosure of said tax liens, plus interest according to law." (Judgment)

18. That the United States shall be granted a deficiency judgment against the trustees in the amount of the difference between the aforementioned indebtedness of the transferees and the amount paid to the United States as a result of the foreclosure of such liens, plus interest according to law. (Conclusions of Law)