De **WEST REALTY CORP.,**
**Plaintiffs-Petitioners,**

v.

The **INTERNAL REVENUE SERVICE OF the UNITED STATES et al.,**
**Defendants-Respondents.**

**No. 76 Civ. 2145.**

United States District Court,
S. D. New York.

July 29, 1976.

Moe D. Karash, Leon J. Barbanel, New York City, for plaintiffs-petitioners.

Robert B. Fiske, Jr., U.S. Atty., S.D.N.Y., New York City, for defendants-respondents; William G. Ballaine, Frederick P. Schaffer, Asst. U.S. Attys., New York City, of counsel.

LASKER, District Judge.

On March 17, 1975, Realty Control Corporation (Realty) transferred to De West Realty Corp. (De West), the plaintiff in this action, a parcel of real estate described as 256–262 West 46th Street and 734–736 8th Avenue, New York, New York. The District Office of Internal Revenue Service had been investigating Realty, as well as approximately thirty other real estate businesses owned or controlled by Jacob Fine, and in the belief that the March 17th transfer was without any apparent consideration, assessed tax liability against De West as a transferee of property of Realty pursuant to 26 U.S.C. § 6901 which authorizes the Government to assess and collect a tax liability from certain transferees of a taxpay-

er's property. Because prior attempts by IRS officials to collect taxes owed by Fine's other businesses had on a number of occasions been frustrated by real estate transactions similar to the one between Realty and De West, a "jeopardy" assessment was made under 26 U.S.C. § 6861 which provides that when the Commissioner of Internal Revenue finds that collection of a tax due and owing from a taxpayer will be "jeopardized by delay" in collection, the Commissioner may immediately assess the tax and upon "notice and demand" "for payment thereof", followed by the taxpayer's "failure or refusal to pay such tax," may immediately levy on the taxpayer's assets.

A jeopardy transferee assessment of $856,135.68—the amount of Realty's corporate income tax liability for the tax years 1971 and 1973, which IRS states is approximately the value of the transferred property at the time of transfer—was made on August 14, 1975, and on the same day De West received a Notice of Jeopardy Assessment. The assessment represents a one million dollar evaluation of the property minus approximately $200,000. in encumbrances.

One day later, on August 15, 1975, a Notice of Federal Tax Lien was filed against De West in New York County and in Albany, New York.

On September 22, 1975, IRS assessed De West $16,552.59 for its own separate liability for income and F.I.C.A. taxes withheld for employees for the second quarter of 1975.

On September 29, 1975, De West received a "90 day letter" from IRS, as required by 26 U.S.C. § 6213, stating that if De West wished to contest the jeopardy assessment, it had to do so by filing a petition with the United States Tax Court within 90 days. De West filed a timely petition on December 24, 1975, opposing the jeopardy transferee assessment.

Before De West's petition was filed but prior to the expiration of the 90 day period, on November 3, 1975, the IRS levied against the property that had been transferred. A Notice of Sealed Bid Sale was sent to De West and on February 27, 1976, the property was sold at a public auction for Fifty Thousand Dollars ($50,000.) to the only individual who submitted a bid. A certificate of sale was issued on March 26, 1976 and the deed was to be delivered on July 26, 1976, after the expiration of the 120 day redemption period as provided in 26 U.S.C. § 6337(b).

De West asserts that the IRS also placed "levies and seizures" on other real estate which it owns and income from such property, although the Government states that only notices of tax liens on such property have been filed pursuant to 26 U.S.C. § 6323.

On the basis of these facts, De West filed a complaint alleging:

(1) that the assessment which IRS made on the transferred property was "arbitrary and capricious" and in bad faith (1st and 9th causes of action);

(2) that the IRS may collect against De West as a transferee only by levying against the property that was allegedly fraudulently conveyed (2nd, 3rd, 4th, 5th, 7th and 9th causes of action); and

(3) that the IRS had no authority to foreclose on the property in order to collect the transferee assessment once De West had filed a timely petition with the Tax Court (8th cause of action).

De West moves for a preliminary order:

(1) enjoining the defendants from placing any further liens on any property acquired by De West other than from Realty;

(2) enjoining the Government from "receiving payment on behalf of the plaintiff and not crediting the plaintiff's liability";

(3) requiring the removal of all transferee liens from property De West owns and acquired from person other than from Realty;

(4) enjoining the selling of its property prior to a Tax Court determination;

(5) enjoining the defendants from placing arbitrary and capricious values on property; and

(6) prohibiting the defendants from violating IRS administrative procedure by de-

nying De West the right to a conference with IRS officials before placing liens upon or seizing its property.

Defendants oppose the motion and move to dismiss.

## I.

### *The Anti-Injunction Statute*

The Government contends that the Internal Revenue Code's Anti-Injunction Statute deprives the court of authority to grant any injunctive relief in this case and that the suit consequently must be dismissed.

The Anti-Injunction Statute, 26 U.S.C. § 7421(b) provides in pertinent part:

"No suit shall be maintained in any court for the purpose of restraining the assessment or collection  .  .  .  of—(1) the amount of liability, at law or in equity, of a transferee of property of a taxpayer in respect of any internal revenue tax  .  .  ."

In *Commissioner v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976), the Supreme Court reaffirmed the view that the Anti-Injunction Statute removes jurisdiction to issue an injunction against the collection of any tax unless "(1) it is 'clear that under no circumstances could the government ultimately prevail' *and* (2) 'equity jurisdiction' otherwise exists."  at 627, 96 S.Ct. at 1071, citing *Enochs v. Williams Packing Co.,* 370 U.S. 1, 5–7, 82 S.Ct. 1125, 8 L.Ed. 292 (1962) (emphasis added)  For the reasons set forth below, we conclude that De West has not met the tests required by *Shapiro* and *Williams Packing.*

## II.

### *The Possibility That the Government Will Prevail*

A.  *Claim that Assessment of the Property Was Arbitrary*

■  As noted above, the IRS assessed the transferred property at $856,135.68.  De West asserts that this assessment was made without any rational basis and that the valuation was in fact fixed only to conform with Realty's corporate tax liability.

The Supreme Court in *Commissioner v. Shapiro* held that § 7421 does not foreclose subject matter jurisdiction over an allegation that an assessment is arbitrary until the government demonstrates that it has a factual basis for the amount of the assessment.  424 at 627–630, 96 S.Ct. at 1070–1072.  The Court noted, however, that:

"The Government may defeat a claim by the taxpayer that its assessment has no basis in fact—and therefore render applicable the Anti-Injunction Act—without resort to oral testimony and cross-examination.  Affidavits are sufficient as long as they disclose basic facts from which it appears that the Government may prevail."  *Id.* 424 at 623, 96 S.Ct. at 1074.

This burden has been met.  According to the affidavit of William Scheck, Revenue Officer in the Manhattan District of the IRS and the officer responsible for collecting the tax liability of De West, the Audit Division-Valuation Section of IRS appraised the transferred property on the basis of account sales of similar properties in the area at prices which varied from $74. to $140. per square foot, and arrived at a valuation of over one million dollars.  From that figure the IRS subtracted the amount of encumbrances on the property to arrive at a final figure of $856,135.68.  (¶ 5)  This approach clearly establishes a rational basis in fact for the assessment.

■  Moreover, the government has persuaded us that the existence and extent of the transferee assessment is not clearly without merit and, consequently, the Anti-Injunction Statute precludes our consideration of its validity.  IRS assessed De West under 26 U.S.C. § 6901 which authorizes the assessment and collection of taxes from certain transferees of a taxpayer's property.  The existence and extent of substantive liability as a transferee under § 6901—that is, what is deemed to be a fraudulent conveyance and the extent to which a creditor may obtain judgment against the transferee for the transferor's liability—is determined by reference to applicable state law.  *Commissioner v. Stern,* 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958).  New York

Debtor and Creditor Law provides that conveyances are fraudulent as to both present and future creditors when made without fair consideration and when a person becomes insolvent as a result of the transfer (§ 273) or when the transferor "intends or believes that he will incur debts beyond his ability to pay as they mature" (§ 275). If a conveyance is fraudulent under these sections, a creditor may obtain judgment against any transferee to whom his debtor has transferred the property up to the value of the property, but not exceeding the amount of the creditor's claim. *Gruenebaum v. Lissauer,* 185 Misc. 718, 57 N.Y.S.2d 137, 147 (Sup.Ct., N.Y.Cty.1945), *aff'd,* 270 App.Div. 836, 61 N.Y.S.2d 372 (1st Dept. 1946). The transferee is entitled to a deduction from the value of the fraudulently conveyed property for the amount of prior encumbrances on the property. *Hamilton National Bank v. Halsted,* 134 N.Y. 520, 31 N.E. 900 (1892).

▆▆ De West does not dispute the government's contention that Realty became insolvent as a result of the conveyance but makes the mathematically inconsistent argument that its assumption of Realty's mortgages on the property constitutes sufficient consideration. However, since the government established a rational basis for assessing the property at one million dollars, we cannot say that the IRS will not prevail in its finding that the transfer was without fair consideration, even in light of De West's assumption of approximately $250,000. in encumbrances. Nor does the fact that the property was sold at the foreclosure sale for $50,000. render the assessment capricious, because the amount received at a foreclosure sale often does not necessarily reflect the ordinary market value of the property.[1] In any event, Section 276 states:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

"Actual intent * * * to hinder, delay, or defraud either present or future creditors * * *" is sufficient to render conveyances fraudulent, and even "fair consideration" cannot save conveyances made under the circumstances proscribed by Section 276. The requisite intent under this section need not be proven by direct evidence but may be inferred (a) where the transferor has knowledge of the creditor's claim and knows that he is unable to pay it; (b) where the conveyance is made without fair consideration; or (c) where the transfer is made to a related party (i. e., husband to wife, corporation to stockholder). See *Klein v. Rossi,* 251 F.Supp. 1 (E.D.N.Y.1966); *Duberstein v. Werner,* 256 F.Supp. 515 (E.D.N.Y.1966); *Sahley v. Tipton Co.,* 264 F.Supp. 653 (D.Del.), *aff'd,* 386 F.2d 450 (3rd Cir. 1967); *Gafco, Inc. v. H.D.S. Mercantile Corp.,* 47 Misc.2d 661, 263 N.Y.S.2d 109 (Civil Ct., N.Y.Co., 1965); cf. *Altman v. Finkel,* 268 App.Div. 666, 52 N.Y.S.2d 634 (1st Dept.), *aff'd mem.,* 295 N.Y. 651, 64 N.E.2d 715 (1945). In the light of the broad terms of the New York statute and the undisputed fact that De West is controlled by the same person as controls Realty, we believe the government has made a threshold showing in accordance with the *Shapiro* test that it will prove intent to defraud creditors and prevail in its allegation that the transfer was fraudulent.

In sum, the defendants have sustained the burden required by *Commissioner v. Shapiro, supra,* to activate the operation of the Anti-Injunction Statute on the claims relating to the existence and extent of the

---

1. New York Debtor and Creditor Law § 272 defines "fair consideration" as:

"Fair consideration is given for property, or obligation,

"a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

"b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

jeopardy assessment. Accordingly, the first cause of action is dismissed.

### B. Claim that the IRS May Collect the Transferee Assessment Only Against the Fraudulently Conveyed Property

■ De West's second basic claim is that the IRS may only collect the amount of the transferee assessment against the value of the transferred property and not from De West property acquired from persons other than Realty. According to De West, the government's rights are determined by reference to state law (*Commissioner v. Stern, supra*) and under state law only the actual property which triggered the transferee assessment is subject to a lien. *Gruenebaum v. Lissauer, supra.*

The government disputes this analysis and argues that it is based on a misunderstanding of its authority under the Internal Revenue Code. As noted above, § 6901(a) states that the "amounts" of the transferee's liability "shall . . . be assessed, paid, and collected in the same manner . . . " as the taxes for which the taxpayer-transferor is liable. The holding by the Supreme Court in *Commissioner v. Stern, supra,* that the existence and extent of liability under § 6901 is governed by state law is based on the absence in the Code of a method for determining those issues. 357 U.S. at 44, 78 S.Ct. 1047. However, the government contends that once state law is applied to determine the existence and dollar amount of transferee liability and that amount has been assessed pursuant to § 6901, *collection* of the assessed liability may be pursued either under applicable state law, or the Internal Revenue Code, which includes specific provisions that are claimed to authorize collection of taxes by levying against "all property and rights to property" of the taxpayer until the full amount of the transferee assessment is paid. See 26 U.S.C. §§ 6321, 6331(a).

We disagree with the government's analysis. It is literally true that the Court in *Stern* held only that "the existence and extent" of transferee liability is governed by state law and did not specifically address itself to the question of what collection procedures are permissible under § 6901. However, as noted above, state law provides that the "extent" of a transferee's liability is the value of the property. To allow the government to levy against the transferee's personal property—or any property not conveyed by the transferor (Realty)—would completely distort the meaning of "extent" as interpreted by state law, eliminate the effect of the *Stern* decision, and essentially convert transferee liability into personal liability for the tax debts of another. Such a result is at odds with case law and commentary, and indeed, would raise serious constitutional questions.

The Court of Appeals in *United States v. Floersch,* 276 F.2d 714, 717 (10th Cir. 1960) stated:

> "The effect of the decision [in *Stern*] is that if, under state law, the assets of a transferor, who becomes insolvent by virtue of such transfer, can be reached in the hands of his transferee by his creditors, they can be reached by the federal government for the purpose of subjecting them to the tax liability of the transferor."

The *Floersch* Court explained:

> "There is no relation between secondary liability, as ordinarily understood, and transferee liability. Secondary liability is a personal liability which attaches when the remedy against the one primarily liable has been exhausted. It is a personal liability which may be satisfied from all the assets of the one secondarily liable. Transferee liability, on the other hand, imposes no personal liability. It subjects only the property in the hands of the transferee to the debts of the transferor. It is a proceeding in rem against the property or fund which the transferee received from the transferor burdened with his debts." *Id.*

Quoted with approval in 9 Mertens, *Law of Federal Income Taxation* § 53.05 (rev.ed. 1971).

Moreover, in a case similar to the one at hand, the Court of Appeals for the Fifth Circuit did not draw the distinction urged

by the government here but rather looked to state law to determine whether the IRS could hold a transferee personally liable (and pursue collection against her personal assets) for the difference between the value of the fraudulently conveyed property at the time of conveyance and the value at the time of foreclosure. *United States v. Estes*, 450 F.2d 62, 65–66 (5th Cir. 1971). The government does not dispute the fact that New York law limits its collection authority to action against the fraudulently conveyed property.[2] Under the authority of *United States v. Floersch, supra*, and *United States v. Estes, supra*, the government is bound by that limitation.

The cases cited by the government to support its position are not on point. In *United States v. Russell,* 461 F.2d 605 (10th Cir. 1972) the court stated that earlier decisions supported:

> "the proposition that the collection procedures of § 6901 are cumulative and alternative—not exclusive or mandatory—and that the Government may maintain an action in law against a fiduciary without following the collection procedures provided in § 6901." *Id.* at 607.

However, the issue in *Russell* concerned the authority of the Government to assess liability under another Code section without any resort to the provisions of § 6901, not as here, with the authority to assess liability under § 6901 and to collect that assessment pursuant to another provision of the Internal Revenue Code. In *United States v. 58th St. Plaza Theatre, Inc.*, 287 F.Supp. 475 (S.D.N.Y.1968), the court held that the government could impose transferee liability on certain funds which it characterized as capital gains. The issue in that case, however, involved the characterization of funds for tax purposes, not the method of collection once a characterization had been made. 287 F.Supp. at 496–500, 503.

Thus, even the cases cited by and most favorable to the government do not support the proposition that it can collect the transferee assessment by levying against property owned by De West and not conveyed by Realty.

C. *The Government's Authority to Foreclose on the Fraudulently Conveyed Property and to Place or Maintain Liens on Other Property of the Debtor*

■ As stated above, the government sold the property conveyed to De West by Realty at a foreclosure sale and the deed was to be delivered on July 26, 1976. De West asserts that its filing of a timely petition with the Tax Court precludes the government from consummating the sale until the Tax Court has rendered a final decision. See 26 U.S.C. § 6863(b)(3). The government contends that the sale was not made to satisfy the jeopardy assessment but to satisfy De West's own liability for income and F.I.C.A. taxes. The government is correct that it may levy to collect De West's liability for its income and F.I.C.A. taxes because De West does not assert that it petitioned the Tax Court to review this assessment and the 90 day period during which it may do so has expired. See 26 U.S.C. § 6213(a). If it applies the proceeds to De West's income and F.I.C.A. tax liability, the assessment for that liability will be satisfied and the liens on De West's other property will be invalid.

D. *De West's Other Claims*

In Paragraphs 33, 34 and 35 of its complaint, De West alleges that officials of the IRS violated administrative regulations by failing "to have the entire matter reviewed in the normal procedure" (Paragraph 33) and to allow it "to present . . . evidence to a conferee or appellate conferee"

---

**2.** The government's attempt to distinguish *Estes* is unpersuasive. While it is true that the government had proceeded in that case to assess and collect from a transferee by means of a deficiency judgment and not directly under § 6901, the law concerning transferee liability is the same under either route. *Commissioner*

*v. Stern, supra.* Nor is the fact that the *Estes* Court did not mention whether the government raised the applicability of federal law important, because the relief the IRS sought necessitated its application and the court specifically noted that only state law was relevant.

(Paragraph 34). However, De West does not cite IRS regulations and under *Shapiro, supra,* and *Williams Packing, supra,* obviously fails to demonstrate any violation.

Finally, although De West alleges that the government has "[received] payment on behalf of the plaintiff and not [credited] the plaintiff's liability," the only source of contention giving rise to this claim is De West's assertion that the IRS cannot simultaneously use the proceeds from the foreclosure sale to satisfy De West's own income and F.I.C.A. tax liability, and maintain liens on other property not conveyed to it from Realty. As indicated above, we agree.

 In sum, the government has demonstrated that (1) the assessment of the property conveyed to De West has a basis in fact and (2) the foreclosure sale may be consummated and the proceeds used to collect De West's income and F.I.C.A. tax liability. However, even under the liberal test enunciated in *Shapiro, supra,* and *Williams Packing, supra,* the government has not established its authority to levy against property other than that conveyed by Realty in order to collect the transferee assessment. Accordingly, the government may maintain liens on other property of De West only to the extent that the liens do not exceed $16,552.59 and only if the proceeds of the foreclosure sale are not used to satisfy De West's income and F.I.C.A. tax liability. There remains to be determined whether De West has satisfied the second requirement of the *Shapiro* and *Williams Packing* test.

### III.

*Irreparable Injury*

In order to avoid application of the Anti-Injunction Statute, De West must also meet the traditional requirements of equity jurisdiction, irreparable injury and the lack of an adequate remedy at law. *Commissioner v. Shapiro, supra,* 424 U.S. at 627, 96 S.Ct. at 1071. The level of "irreparable injury" which a taxpayer must establish in a tax suit is a particularly high one—"destruction of the plaintiff's business." See *Miller v. Standard Nut Marga-*

*rine Co.,* 284 U.S. 498, 510, 52 S.Ct. 23, 76 L.Ed. 517 (1932); *Midwest Haulers, Inc. v. Brady,* 128 F.2d 496, 499 (6th Cir. 1942); *Globe Products Corp. v. United States,* 386 F.Supp. 319, 324 (D.Md.1974).

Apart from stating that it has been prevented from selling certain of its property because of the presence of tax liens, De West has submitted no proof to establish that it meets this test. The Anti-Injunction Statute consequently mandates dismissal of the suit.

Accordingly, the complaint is dismissed unless within five days from the filing of this Memorandum De West submits proof that it will suffer irreparable injury if injunctive relief is not granted. If such proof is submitted and meets the standard described above, a preliminary injunction will be entered enjoining the government from placing tax liens on property other than that conveyed to De West by Realty if the IRS uses the proceeds of the foreclosure sale to satisfy De West's income and F.I.C.A. liability.

It is so ordered.