James P. HASSETT, as Trustee of the Liquidating Estate of Continental Information Systems Corporation, et al. Judgment Creditor,

v.

Harry E. GOETZMANN, Jr. Judgment Debtor.

James P. HASSETT, as Trustee of the Liquidating Estate of Continental Information Systems Corporation, et al. Petitioner,

v.

Sylvia R. GOETZMANN and Eric Goetzmann, Respondents.

Misc. No. 3368 (NPM).

United States District Court, N.D. New York.

Jan. 26, 1998.

---

Hancock & Estabrook, LLP, Syracuse, NY, (Stephen A. Donato, Daniel B. Berman, of counsel), for Judgment Creditor and Petitioner.

Poushter, Marshall & Leberman, P.C., Syracuse, NY, (William J. Leberman, of counsel), for Judgment Debtor and Respondents.

## MEMORANDUM–DECISION & ORDER

McCURN, Senior District Judge.

James P. Hassett, as Trustee of the Liquidating Estate of Continental Information Systems Corporation ("Trustee"), initially commenced this proceeding pursuant to Rule 69(a) of the Federal Rules of Civil Procedure and Article 52 of the New York Civil Practice Law and Rules to enforce a money judgment obtained against Harry E. Goetzmann, Jr. (the "Judgment Debtor") in the amount of $51,700. The Trustee's petition, dated Mach 13, 1995 (the "Petition"), contains three causes of action, each of which seeks to set aside certain transfers made by the Judgment Debtor to Sylvia R. Goetzmann, his wife ("S. Goetzmann"), and to Eric Goetzmann, his son ("E. Goetzmann") (collectively "Respondents") (the Judgment Debtor and the Respondents are collectively referred to as "Defendants"). Subsequent to the commencement of this proceeding, the Trustee obtained another judgment against the Judgment Debtor in the amount of $364,791 and has consolidated the enforcement of that judgment with the enforcement of the $51,-700 judgment in this proceeding (collectively the two judgments are referred to as the "Judgments"). After the filing of the Petition, this court issued restraining orders on June 13, 1995 against each of the Respondents preventing them from selling, assigning, transferring, or otherwise disposing of assets transferred to them by the Judgment Debtor. In this proceeding, the Trustee seeks an order setting aside various convey-

ances made by the Judgment Debtor to the Respondents, for judgment against each of the Respondents personally, and an award of attorneys' fees to be set by a subsequent order.

## BACKGROUND

On January 13, 1989, Continental Information Systems Corporation ("CIS") filed voluntary petitions in the United States Bankruptcy Court for the Southern District of New York under Chapter 11 of the United States Bankruptcy Code. *See* Petition at ¶ 12. The Judgment Debtor founded CIS and prior to the appointment of the Trustee he was Chairman and Chief Executive Officer of CIS. *See* Affidavit of Harry E. Goetzmann, Jr. ("Goetzmann Aff.") at ¶ 4.

On June 11, 1990, the Trustee commenced an adversary proceeding in the Bankruptcy Court against the Judgment Debtor seeking to recover $364,781 in bonuses paid to the Judgment Debtor by CIS ("Adversary Proceeding I"). *See Hassett v. Goetzmann (In re CIS Corp.)*, 195 B.R. 251, 252 (Bankr. S.D.N.Y.1996). The bonuses were paid just two weeks before the Judgment Debtor caused the Chapter 11 petitions to be filed by CIS and at a time when CIS was insolvent. *Id.* at 252, 262. Adversary Proceeding I was brought on the ground that such bonus payments were voidable preferences under 11 U.S.C. § 547, or in the alternative, that they were fraudulent conveyances under 11 U.S.C. § 548. *See id.* at 252; Trustee's Memorandum of Law ("Trustee's Mem.") at 24. The Trustee moved for summary judgment and on September 13, 1991, the Bankruptcy Court issued an order directing the entry of judgment against the Judgment Debtor in the amount of $364,781. *See Hassett*, 195 B.R. at 252–53. The Judgment Debtor appealed this order and the United States District Court for the Southern District of New York vacated the September 13, 1991 order and remanded the case to the Bankruptcy Court for a factual determination. *See id.* at 253; *See Hassett v. Goetzmann*, No. 91 Civ. 7689, 1992 WL 404320 (S.D.N.Y. Dec. 22,

1992). The Trustee and the Judgment Debtor proceeded to a bench trial on February 25 and 26, 1993. *See Hassett*, 195 B.R. at 253. On April 15, 1996 the Bankruptcy Court issued its decision ordering that the Trustee may recover the entire $364,781 payment to the Judgment Debtor plus interest dating from March 22, 1990.[1] The Judgment Debtor did not appeal this decision and the time for him to do so has expired. *See* Docket Document No. 23. On July 1, 1996, the Trustee registered this judgment in this district pursuant to 28 U.S.C. § 1963. *See id.*

On April 29, 1991, the Trustee commenced an adversary proceeding against the Judgment Debtor in the Bankruptcy Court seeking recovery of $51,700 in alleged fringe benefits that CIS paid to the Judgment Debtor ("Adversary Proceeding II"). *See* Petition at ¶ 14. The Trustee moved for summary judgment and on November 18, 1993, the Bankruptcy Court issued an order directing the entry of a judgment against the Judgment Debtor for the sum of $51,700 plus pre- and post-judgment interest. *See Id.* at ¶ 15. The Judgment Debtor appealed the judgment to the United States District Court for the Southern District of New York. *See id.* at 16. That court, in a Memorandum–Opinion dated June 10, 1994, affirmed the judgment of the Bankruptcy Court. *See Hassett v. Goetzmann*, No. 93 Civ. 8929, 1994 WL 263436 (S.D.N.Y. June 10, 1994). The Judgment Debtor appealed this decision to the Second Circuit which affirmed the judgment on December 9, 1994, and issued its mandate on January 3, 1995. *See* Petition at ¶ 17. The Judgment Debtor took no further appeal from the Second Circuit's decision, and the time for him to do so has expired. *See id.* at ¶ 18. On March 10, 1995, the Trustee registered this judgment in this district pursuant to 28 U.S.C. § 1963. *See id.* at ¶ 10; Docket Document No. 1.

The Judgment Debtor maintains that he lacks assets to satisfy the judgments against him. *See* Goetzmann Aff. at ¶ 9. Pursuant to an oral agreement entered into in March of 1989 ("Oral Agreement"), the Judgment

---

1. There exists a minor discrepancy in the amount of the judgment as set forth in the Bankruptcy Court's Memorandum–Decision, $364,781, and

the amount that is set forth in the Bankruptcy Court's Order, $364,791. The court will utilize the $364,791 amount as set forth in the Order.

Debtor transferred a significant number of assets to S. Goetzmann in return for S. Goetzmann's pledge of her interests in their residence, a nearby parcel of undeveloped lakefront property, and their camp, to secure the Judgment Debtor's indebtedness to Merchants National Bank and Trust Company of Syracuse ("MNB") and Chase Lincoln Bank. *See id.* at ¶ 14; Petition at ¶ 39. The Judgment Debtor subsequently drafted and executed a written acknowledgment of the Oral Agreement designated as the Sale and Assignment agreement ("Assignment Agreement"). *See* Goetzmann Aff. at ¶ 17; Petition at ¶ 39; Affidavit of Jeffrey E. McFadden ("McFadden Aff."), Exhibit "6" (Assignment Agreement). Although this Assignment Agreement is dated "as of" March 15, 1989, the Trustee alleges, and the Judgment Debtor concedes, that it was not actually executed until sometime after that date. See Goetzmann Aff. at ¶ 17; Petition at ¶ 39.

The total estimated value of the assets transferred to S. Goetzmann exceeded $5 Million.[2] Among the assets conveyed to S. Goetzmann by the Judgment Debtor pursuant to the Oral Agreement as memorialized by the Assignment Agreement were the Judgment Debtor's interest in his marital residence and 19.42 acres of adjacent land on Skanealetes Lake in Skanealetes, New York, valued at $1,800,000; the Judgment Debtor's interest in his camp located on Heron Lake in Upper St. Regis, New York valued at $400,000; the Schomann Entertainment Companies (which included Chesterfield Cablevision, Inc., Hamilton County Cable T.V., Inc., Area Telecable Corporation, Galeton TV Antenna, Inc., Mansfield Video Systems, Inc., and Communicable, Inc.) valued at $3,000,000; the Schomann Entertainment Corporation Note in the amount of $576,000; 547,547 shares of CIS common stock valued at $342,217; the Judgment Debtor's interest in Onondaga Venture Capital Fund, Inc. valued at $35,000; the Hickey Properties' Note in the amount of $105,000; the Judgment Debt-

or's interest in Hickey Management, Inc.; the Judgment Debtor's interest in Continental Realty Fund of New York, Inc. valued at $12,500; the Judgment Debtor's interest in Sytel Ltd. Partnership valued at $550,000; the Judgment Debtor's interest in Ares–Serono Research; the Judgment Debtor's interest in his automobiles valued at $20,000; and antiques, boats, and jewelry valued at $200,000.[3]

The Trustee maintains that the Assignment Agreement was ineffective to convey the assets it purported to convey because the transfers were not properly effectuated as of the date of the Assignment Agreement. *See* Trustee's Mem. at 18–23. The Trustee asserts that the Judgment Debtor and S. Goetzmann did not record the transfer of any of these assets made pursuant to the Assignment Agreement until after the Trustee initiated Adversary Proceeding II in April 1991. *See id.;* Petition at ¶ 47. Moreover, the Trustee contends that even after the entry of the $51,700 judgment from Adversary Proceeding 11, the Judgment Debtor continued to record transfers of assets to S. Goetzmann or attempted to do so, allegedly pursuant to the Assignment Agreement. *See* Petition at ¶ 48. The Trustee also asserts that notwithstanding the purported conveyances, the Judgment Debtor retains the possession, benefit, and use of all or substantially all of the assets he transferred to S. Goetzmann pursuant to the Assignment Agreement. *Id.* at 50. For those assets that have been sold, the Trustee asserts that the Judgment Debtor retains the possession, benefit, and use of the proceeds from the sales. *See id.* at ¶ 50. In addition to the assets purportedly transferred pursuant to the Assignment Agreement, the Trustee claims that the Judgment Debtor also transferred a substantial amount of other assets to S. Goetzmann, including from March 1988 through October 1991, three checks totaling over $300,000. *See id.* at ¶ 55. The Trustee also contends that between November 1988 and April 1991, the

---

2. The value of the assets are approximated from the sworn financial statement the Judgment Debtor provided MNB in January 1989, two months before the alleged date of the Assignment Agreement. *See* McFadden Aff. at Exhibit "3" (financial statement).

3. Some assets are listed without an approximated value because such a value could not be determined from the record.

**14**

Judgment Debtor wrote checks to E. Goetzmann totaling nearly $400,000.[4] *See id.* at ¶ 56. Finally, the Trustee asserts that from 1988 through 1991, the Judgment Debtor wrote checks to numerous other family members totaling more than $300,000.[5] *See id.* at ¶ 57.

The Trustee asserts three causes of action in the Petition, each of which seeks to set aside these transfers. The first count, pursuant to § 273 of the New York Debtor and Creditor Law ("DCL"), seeks to avoid the asset transfers the Judgment Debtor made to S. Goetzmann pursuant to the Assignment Agreement as well as the asset transfers to E. Goetzmann. The basis for setting aside these transfers according to the Trustee is that they rendered the Judgment Debtor insolvent—or the Judgment Debtor was insolvent at the time of the transfers—and the transfers lacked fair consideration. *See* Trustee's Mem. at 23–27; Petition at ¶ 59. Similarly, in the second count, pursuant to § 273-a of the DCL, the Trustee seeks to avoid the asset transfers the Judgment Debtor made to S. Goetzmann pursuant to the Assignment Agreement and the asset transfers to E. Goetzmann. The basis for this count is that the Judgment Debtor failed to satisfy the Judgments against him; the transfers lacked fair consideration; and the Judgment Debtor made the transfers at times when he was a defendant in an action for money damages. *See* Trustee's Mem. at 28–30; Petition at ¶ 61. In the third count, pursuant to § 276 of the DCL, the Trustee seeks to avoid the asset transfers the Judgment Debtor made to S. Goetzmann purportedly pursuant to the Assignment Agreement and the transfers made to E. Goetzmann. In this third count, the Trustee alleges that the Judgment Debtor made the transfers with the actual intent to hinder, delay, or defraud either present or future creditors, including the Trustee. *See* Trustee's Mem. at 32–34; Petition at ¶ 63. Lastly, the Trustee seeks his attorneys' fees in connection with this matter pursuant to § 276-a of the DCL. *See* Trustee's Mem. at 36.

## DISCUSSION

### I. *The Nature of the Proceeding*

■ The court maintains jurisdiction over this matter pursuant to 28 U.S.C. § 1963 and principles of ancillary jurisdiction.[6] With jurisdiction over the Judgments established, the manner in which the court may enforce these Judgments is governed by Rule 69 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 69(a). Rule 69(a) provides, in pertinent part, that proceedings supplementary to and in aid of a judgment docketed in federal court shall be in accordance with the procedure of the state in which the district court is held. *See id.* Inasmuch as the district court is located in New York, it looks to New York law in this matter. *See Beauvais v. Allegiance Securities Inc.*, 942 F.2d 838, 840 (2d Cir.1991). Article 52 of the New York Civil Practice Law and Rules ("CPLR") provides the procedural framework within which a judgment creditor may seek relief against a judgment

---

4. The checks conveyed from the Judgment Debtor to E. Goetzmann were as follows:

| Check No. | Date | Amount |
|---|---|---|
| 423 | November 18, 1988 | $95,000 |
| 424 | November 21, 1988 | $50,000 |
| 425 | November 21, 1988 | $50,000 |
| 451 | December 19, 1988 | $22,000 |
| 454 | December 31, 1988 | $50,000 |
| 538 | May 21, 1989 | $50,000 |
| 863 | July 18, 1990 | $16,500 |
| 864 | July 18, 1990 | $30,000 |
| 1018 | April 12, 1991 | $30,000 |

5. The Trustee also alleges that S. Goetzmann transferred certain assets to E. Goetzmann. *See* Trustee's Mem. at 15–16.

6. Section 1963 of Title 28 provides, in pertinent part, that

[a] judgment in an action for the recovery of money or property entered in any district court . . . may be registered by filing a certified copy of such judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner. . . .

28 U.S.C. § 1963. Here, the Trustee has properly filed the two judgments that he seeks to enforce in this proceeding. *See* Docket Document Nos. 1 and 23. Therefore, the court maintains jurisdiction to enforce these judgments as if they were judgments of this court. *See* 28 U.S.C. § 1963.

debtor and third parties who are in possession of assets of the judgment debtor. *See RCA Corp. v. Tucker,* 696 F.Supp. 845, 848 (E.D.N.Y.1988) (Rule 69 and Article 52 "together provide for a summary-type special proceeding to enforce a judgment by directing a third party garnishee to turn over to the judgment creditor property or debts belonging to the judgment debtor.").

■ While Rule 69 and Article 52 of the CPLR provide the procedural framework, Article 10 of the DCL, which incorporates New York's enactment of the Uniform Fraudulent Conveyance Act, contains the substantive law governing an action wherein a creditor seeks to avoid a debtor's alleged fraudulent conveyance. *See HBE Leasing Corp. v. Frank,* 48 F.3d 623, 633 (2d Cir. 1995); *see also Kashi v.. Gratsos,* 712 F.Supp. 23, 27 (S.D.N.Y.1989) (a judgment creditor "may set aside a transfer if he can show that his 'rights to the property are superior to those of the transferee' ... and ... [t]he superiority of rights in this situation 'is a matter to be determined by applying the fraudulent conveyance provisions of the Debtor and Creditor Law.'" (quoting CPLR § 5225(b); *Gelbard v. Esses,* 96 A.D.2d 573, 575, 465 N.Y.S.2d 264, 267 (2d Dep't 1983))). Here, the Trustee seeks, *inter alia,* to enforce the Judgments by avoiding certain transfers made to Respondents pursuant to DCL §§ 273, 273–a, 276, 276–a, and 278. The court will discuss each of these sections in turn.

In seeking his relief, the Trustee asserts that he is entitled to a summary determination on the issues before the court because there exists no genuine issue of material fact with respect to whether the transfers were fraudulent under the DCL. *See HBE Leasing Corp. v. Frank,* 48 F.3d at 633 (summary relief is available under an action pursuant to Article 52 applicable in the district court via Rule 69 where there are no questions of fact (citing *General Motors Acceptance Corp. v. Norstar Bank of Hudson Valley,* 156 A.D.2d 876, 549 N.Y.S.2d 862, 863 (1989))). Pursuant to Federal Rule of Civil Procedure 56(c), which governs this action, *see Allen Morris Commercial Real Estate Servs. Co. v. Numistatic Collectors Guild, Inc.,* No. 90 Civ. 264, 1993 WL 183771, *3 (S.D.N.Y. May 27, 1993), summary judgment shall enter if, when viewing the evidence most favorable to the non-moving party, the court determines that there are no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *e.g., Commander Oil v. Advance Food Serv. Equipment,* 991 F.2d 49, 51 (2d Cir.1993). In order to survive a motion for summary judgment, the non-moving party must do more than proffer evidence that is merely colorable, conclusory, or speculative. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Furthermore, the non-moving party must show more than some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, it is incumbent upon the non-moving party to present sufficient evidence in its favor to allow a jury to return a verdict for that party in order to survive a motion for summary judgment. *E.g., Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. With these standards in mind, the court addresses the substance of the Trustee's motions.

II. *Enforcement of the Judgments*

A. *New York Debtor and Creditor Law Section 273*

■ Section 273 of the DCL provides that "[e]very conveyance made ... by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made ... without a fair consideration." DCL § 273. As the statute indicates, a transfer is fraudulent under this section as to creditors, without regard to the transferor's actual intent, if that transfer renders the transferor insolvent and is made without fair consideration. *Id.; e.g., A.F.L. Falck, S.p.A. v. E.A. Karay Co.,* 722 F.Supp. 12, 17 (S.D.N.Y.1989), *reargued on other grounds,* 131 F.R.D. 46 (S.D.N.Y.1990); *County of Dutchess v. Dutchess Sanitation Servs., Inc.,* 86 A.D.2d 884, 885, 447 N.Y.S.2d 531, 533 (2d Dep't 1982) (actual intent to defraud is not an element under § 273). In order to succeed

on his motion for summary judgment pursuant to § 273, the Trustee must demonstrate that there is no material issue of fact that he was the Judgment Debtor's creditor at the time of the conveyances, the conveyances rendered the Judgment Debtor insolvent, and the conveyances were made without fair consideration. *See Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260, 1272–73 (S.D.N.Y.1991).

### 1. Trustee as Creditor of Judgment Debtor

To maintain an action pursuant to § 273, the Trustee must show that he or CIS was a creditor as of the time the Judgment Debtor transferred his assets. DCL § 273. On the record before the court, the earliest date that the Judgment Debtor transferred the majority of his assets was March 15, 1989, the date of the Assignment Agreement.[7] Thus, if the Trustee was a creditor as of March 15, 1989, then he would have standing to challenge the majority of the asset transfers and the first element under § 273 would be satisfied.

The Trustee maintains that CIS became a creditor of the Judgment Debtor as of the date CIS filed its bankruptcy petitions. *See* Trustee's Memorandum at 23; Petition at ¶ 49. The basis for this position is that the adversary proceedings underlying the Judgments being enforced here were brought to recover pre-bankruptcy payments. Thus, the Trustee asserts that CIS's claim accrued upon the filing of the bankruptcy petitions.

In response, Defendants assert that the Trustee cannot be deemed a creditor prior to the commencement of an adversary proceeding because that was the date the Judgment Debtor received notice that there was a claim

against him.[8] *See* Defendants' Memorandum at 4–5. Thus, since no adversary proceeding was commenced prior to March 15, 1989, Defendants contend that the Trustee is unable to maintain his action with respect to the Assignment Agreement under § 273. Defendants also maintain that there is no authority to support the Trustee's position and point out that the Trustee failed to submit any such authority to the court.

. Notwithstanding Defendants' position, the court determines that the Trustee was a creditor as of the date the bankruptcy petitions were filed.[9] Section 270 of the DCL defines a creditor as "[a] person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." DCL § 270. Thus, by its very definition, the term creditor includes persons with contingent or unmatured claims. *See Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F.Supp. 765, 771 (E.D.N.Y .1995) (holding that a debt need not be due and owing for a person to be considered a creditor under § 270 of the DCL).

Courts that have analyzed § 270 of the DCL have determined that a person is conferred creditor status as of the time his claim accrues. *E.g.*, *United States v. Red Stripe, Inc.*, 792 F.Supp. 1338, 1342–43 (E.D.N.Y. 1992) (in an action to set aside a fraudulent conveyance pursuant to § 273 where defendant corporation transferred assets to sole shareholder, court held that government was a creditor of defendant corporation as of the date defendant's tax liability became due, even though no tax liability was assessed, because that was the date the government's claim accrued); *see United States v. Nirelli*, No. 92–CV–563C, 1996 WL 140393, *3,

7. While there exists significant doubt as to whether the Assignment Agreement was effective to transfer the assets it purports to transfer as of March 15,1989, for purposes of this summary judgment motion the court will utilize this date because there is no issue as to whether the purported transfers could have occurred earlier. *See* Goetzmann Aff. at ¶ 17 ("I believe [the Assignment Agreement] was signed well before any adversary proceeding was commenced against me.").

8. At the time the Petition was filed the Trustee had not yet obtained a judgment in Adversary

Proceeding 1. Thus, Defendants assert that the date the Trustee became a creditor of the Judgment Debtor is April 29, 1991, the date of filing of Adversary Proceeding II.

9. The court need not examine whether the Trustee, standing in the shoes of CIS, became a creditor of the Judgment Debtor at an even earlier date, such as the date the preferential transfers were made. For purposes of this motion, it need only be determined that the Trustee was a creditor at the time the assets were transferred.

(W.D.N.Y. Jan. 4, 1996) (for a conveyance to be set aside under § 273 of the DCL, the liability in question need only have accrued at the time of the conveyance); *Studley v. Lefrak*, 66 A.D.2d 208, 214, 412 N.Y.S.2d 901, 905 (2d Dep't) ("Under the statute a creditor has standing to maintain an action to set aside a fraudulent transfer, though his debt may not have been in existence at the time of the transfer."), *aff'd*, 48 N.Y.2d 954, 425 N.Y.S.2d 65, 401 N.E.2d 187 (1979). Other courts to examine the issue of when a person obtains creditor status have employed the same rationale and reached similar results. *See Klingman v. Levinson*, 114 F.3d 620, 626 (7th Cir.1997) (interpreting Illinois fraudulent conveyance statute in a case to set aside conveyances by attorney-embezzler, the court agreed with the district court's finding that the plaintiff was a creditor as of the time her funds were embezzled, stating "for purposes of the fraudulent conveyance action, [plaintiff] became a creditor when her claim arose in 1969"); *Scholes v. African Enterprise, Inc.*, 854 F.Supp. 1315, 1326 (N.D.Ill. 1994) (in analyzing Illinois fraudulent conveyance statute, court determined that plaintiff was a creditor at the time the indebtedness arose as a result of the misappropriation of funds); *Walk–In Medical Ctrs., Inc. v. Breuer Capital Corp.*, 778 F.Supp. 1116, 1124 (D.Colo.1991) (under Colorado fraudulent transfer statute, court determined plaintiff was "entitled to creditor status from the date of [defendant's] breach of the [ ] agreement."); *Harper v. United States*, 769 F.Supp. 362, 367 (M.D.Fla.1991) ("The United States was a creditor with standing to institute a fraudulent conveyance action since the assessments made against [the transferor] relate back to the tax years from which the liability arose." (citing *United States v. Hickox*, 356 F.2d 969, 972 (5th Cir.1966) *United States v. Ressler*, 433 F.Supp. 459,

463 (S.D.Fla.1977))); *In re Speir*, 190 B.R. 657, 662–63 (Bankr.N.D.Ala.1995) (in a fraudulent transfer action under Alabama law by a trustee where the transferor transferred property three months before the filing of the bankruptcy petition, the court determined that the law "fixes the date giving rise to a creditor's right in Alabama to seek to set aside a fraudulent transfer, as the date of the wrongful act that gives rise to those rights."). While the courts in the above-cited cases interpreted slightly different fraudulent conveyance statutes, these cases are sufficiently analogous to lend support to the analysis here.

 In the instant matter, the Trustee's action accrued upon CIS's filing of its bankruptcy petitions. Upon the filing of a bankruptcy petition, an estate is created for the benefit of creditors and title to the debtor's property vests with the Trustee. *E.g.*, *Bryson v. Bank of New York*, 584 F.Supp. 1306, 1315 (S.D.N.Y.1984); *see* 11 U.S.C. § 541. The trustee or the debtor-in-possession is then charged with the responsibility of gathering the assets of the estate for the creditors' benefit.[10] *Cf. Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 745 (5th Cir.1989) ("only the trustee in bankruptcy, not individual creditors, has standing to recover property belonging to the estate"); *See* 11 U.S.C. § 521. Prepetition preferential transfers or fraudulent conveyances are included among the assets of the estate. *See* 11 U.S.C. § 541(a)(1); *In re Rerisi*, 172 B.R. 525, 528 (Bankr.E.D.N.Y. 1994) (estate property is comprised of all equitable and legal interests that the debtor had in property, including causes of action); *cf. Carlton v. Baww, Inc.*, 751 F.2d 781, 785 (5th Cir.1985) ("property that the debtor has fraudulently conveyed remains 'property of

---

**10.** The fact that the Trustee was appointed subsequent to the filing of the bankruptcy petition is no cause for distraction inasmuch as a debtor-in-possession is entitled to assert all the rights that a trustee would be entitled to assert and the trustee is entitled to assert all of the rights the debtor-in-possession had at the time of the filing of the bankruptcy petition. *Cf.* 11 U.S.C. § 1107(a); *see JEPSCO Building Materials, Inc. v. Bostwick Steel Lath Co. (In re JEPSCO Building Materials, Inc.)*, 15 B.R. 122, 124 (Bankr.S.D.Fla.

1981) (debtor-in-possession was entitled to recover funds erroneously paid to creditor prior to filing of Chapter 11 proceeding because a debtor-in-possession was vested with all the rights and powers of a trustee); *see also In re Rerisi*, 172 B.R. 525, 527 (Bankr.E.D.N.Y.1994) ("the Trustee stands in the shoes of the debtor and has no more and no less interest than that which the debtor had as of the date of the filing of the petition.").

the estate.' "). It is therefore on the date of the filing of the bankruptcy petition that either a trustee or a debtor-in-possession acquires standing to set aside fraudulent conveyances or preferential payments. *See Ocean Energy 11*, 868 F.2d at 745 ("bankruptcy did not extinguish the right to recover the property the debtor may have fraudulently transferred. Rather, bankruptcy simply caused the right to vest in the trustee." (citations and quotations omitted)); *In re Speir*, 190 B.R. at 664 ("the right to recover the property of a fraudulent transfer vested in a bankruptcy trustee on the date of the filing of the bankruptcy."); *cf. Davis v. Security National Bank of Nevada*, 447 F.2d 1094, 1097 (9th Cir.1971) (albeit in a different context, the court set forth that the provisions of the Bankruptcy Code preserve to the estate its rights in preferential and fraudulent transfers and vests in the trustee a title to property that relates back to the filing of the bankruptcy petition). Thus, the court concludes that the Trustee was a creditor of the Judgment Debtor as of the date of the filing of the bankruptcy petition because claims in the underlying actions accrued on that date.

### 2. Insolvency of the Judgment Debtor

The second element under § 273 requires that the conveyances rendered the transferor insolvent. Pursuant to § 271 of the DCL, a person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured. DCL § 271. The Trustee asserts that the Judgment Debtor's own financial statements establish that the Judgment Debtor transferred to S. Goetzmann assets in excess of his net worth and thus the conveyances rendered him insolvent. *See* McFadden Aff., Exhibit "3" (financial statement); *Farm Stores, Inc. v. School Feeding Corp.*, 102 A.D.2d 249, 252–253, 477 N.Y.S.2d 374, 377 (2d Dep't 1984), *aff'd*, 64 N.Y.2d 1065, 489 N.Y.S.2d 877, 479 N.E.2d 222 (1985) (defendant corporation was rendered insolvent "inasmuch as the fair salable value of its assets after the transfers was less than the amount that would be required to pay the probable

liability on its existing debts as they became absolute and matured").

Defendants simply counter that questions of a transferor's solvency are questions of fact not capable of being determined as a matter of law. Defendants, however, fail to proffer any evidence to demonstrate that there exists a question of fact for resolution. The Judgment Debtor's affidavit offers no information concerning his insolvency other than the single statement that "I respectfully submit that when the Court examines the Trustee's proof and my explanation of the transfers, it is beyond doubt that ... [t]he Trustee fails to prove that I was insolvent when or immediately after I transferred any assets." *See* Goetzmann Affidavit at ¶ 11. Moreover, the defendants admit that pursuant to the Assignment Agreement, the Judgment Debtor transferred virtually all of his unencumbered assets to S. Goetzmann in return for the pledge of her interests in the Goetzmanns' marital residence and a nearby parcel of undeveloped lakefront acreage to secure the Judgment Debtor's indebtedness to MNB. *See* Answer at ¶ 1.

Thus, not only have Defendants failed to adequately refute the Trustees showing that the Judgment Debtor was rendered insolvent by the conveyances, but Defendants' own admissions support such a conclusion. Accordingly, the court determines that the Trustee has established this second element as a matter of law.

### 3. Fair Consideration

The third element under this claim is that the transfers were made without fair consideration. Section 272 of the DCL provides, in relevant part, that "fair consideration" is given for property, or obligation: "[w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied," or "[w]hen such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained." DCL § 272(a) & (b). Thus, a transfer for fair

consideration is one that is made in exchange for both "a fair equivalent" and "in good faith." *See, e.g., Remo Drug Corp. v. Sheik,* No. CV–89–0508, 1990 WL 82820, at *1 (E.D.N.Y. June 12, 1990); *Southern Industries, Inc. v. Jeremias,* 66 A.D.2d 178, 181–82, 411 N.Y.S.2d 945, 948–49 (2d Dep't 1978).

The Trustee asserts that the assets listed in the Assignment Agreement were transferred to S. Goetzmann from the Judgment Debtor without fair consideration. The Trustee points out that the fair market value of the real estate interests that S. Goetzmann claims to have mortgaged in consideration for the transfer of more than $5 million in assets was $794,091.50. This is approximately $4.4 million less than the value of the assets the Judgment Debtor purportedly conveyed to S. Goetzmann. *See* Trustee's Mem. at 26.

Defendants counter with two alternative points to support their contention that the Trustee has failed to establish this element as a matter of law. First, they argue that the Judgment Debtor's financial statement, dated January 24, 1989, is not the proper gauge to measure the Judgment Debtor's assets that were transferred on March 15, 1989 pursuant to the Assignment Agreement because the value of some of the listed assets decreased precipitously between January 24, 1989 and March 15, 1989. The court rejects this argument. First, as the Trustee points out, the Judgment Debtor, in his sworn personal financial statement to MNB dated January 24, 1989, valued his interests in the asserts he transferred to S. Goetzmann pursuant to the Assignment Agreement at approximately $4.6 million. *See* McFadden Aff. Exhibit "3." Moreover, as the Trustee also points out, on this same financial statement, the Judgment Debtor valued S. Goetzmann's interests in the assets she pledged to secure the Judgment Debtor's indebtedness pursuant to the Assignment Agreement at approximately $600,000. To argue that the value of the assets declined so precipitously that the assets were transferred for fair consideration is nothing more than a futile attempt to create an issue of fact where none exists. Even assuming the value of some of the assets "declined precipitously," Defendants fail to submit sufficient evidence to demonstrate the amount of decline raises a genuine issue of material fact. Thus, the court finds the consideration given—to the extent any consideration was given at all—was "disproportionately small" and did not constitute a fair equivalent in exchange for the assets transferred. *See* DCL § 272. Accordingly, Defendants failed to raise a question of fact with respect to the Trustee's showing as to this element, especially given that this was an intrafamily transaction. *See Orbach v. Pappa,* 482 F.Supp. 117, 119 (S.D.N.Y.1979); *see also Liggio v. Liggio,* 53 A.D.2d 543, 385 N.Y.S.2d 33 (1st Dept.1976) ("In an intrafamily transaction, it is well-settled that a heavier burden is placed on the grantee to establish fair consideration for the transfer").

In the alternative, Defendants urge that the court, when evaluating the consideration issue, consider what the Judgment Debtor received—loans of almost $3 million—and not what S. Goetzmann pledged—less than $1 million in assets. Defendants assert that "[w]hile it is true that [S.] Goetzmann pledged assets which at the time had a value less than what [the Judgment Debtor] transferred to her,[11] the Court must consider what [the Judgment Debtor] received ... [because he] would not have received those loans without [S.] Goetzmann pledging her assets." Defendants' Memorandum of Law ("Defendants Mem.") at 8. This argument likewise must fail. Such a comparison is not appropriate when evaluating whether the transaction was for fair consideration. The appropriate comparison is the exchange between the parties; not what one party may have obtained from a third party as a result of the exchange. *See* DCL § 272(a). Moreover, this argument is contradicted by the record. The Judgment Debtor's affidavit sets forth that the pledge of assets by S. Goetzmann was "to further collateralize" an existing debt. *See* Goetzmann Aff. at ¶ 14. To suggest that the Judgment Debtor re-

---

11. While counsel for Defendants was left with little choice but to make this argument given the futility of the first argument, this statement can be read as an implicit concession by the Judgment Debtor that the assets were not transferred for fair consideration.

ceived new consideration for the pledge of collateral by S. Goetzmann is to mischaracterize the nature of the pledge by S. Goetzmann.

With respect to the money transferred to E. Goetzmann, these transfers were also made without fair consideration. The Judgment Debtor admits that he transferred the money, but that he transferred it to prevent MNB from exercising its right of setoff in the event of the Judgment Debtor's default because MNB was, according to the Judgment Debtor, sufficiently collateralized. *See* Goetzmann Aff. at ¶¶ 23–25. Defendants thus assert that the money was transferred to E. Goetzmann for the Judgment Debtor's use—*i.e.*, in trust—and therefore this constituted adequate consideration. *See id.* Defendants' position that the money was essentially put in trust has been rejected by courts that have examined similar arguments. *E.g., Bucki v. Singleton (In re Cardon Realty Corp.)*, 146 B.R. 72, 77–78 (Bankr.W.D.N.Y. 1992) (court held defendant's trust theory could not shield transfers from being deemed fraudulent). The court likewise rejects such an argument here. What E. Goetzmann did with the funds after they were fraudulently transferred to him does not create a question of fact with respect to whether they were initially transferred for fair consideration. Thus, the money transferred to E. Goetzmann by checks after January 13, 1989 was transferred without fair consideration.

Accordingly, the court finds that the Trustee has established this third element under § 273. As the foregoing discussion demonstrates, the Trustee has established all of the elements to entitle him to relief under § 273. Inasmuch as the defendants have failed to raise a genuine issue of material fact with respect to any of these elements, the court finds that all of the assets transferred pursuant to the Assignment Agreement were fraudulently transferred pursuant to § 273. In addition, the court finds that the money transferred to E. Goetzmann by checks after

January 13, 1989 also constituted fraudulent transfers pursuant to § 273.[12]

*B. New York Debtor and Creditor Law Section 273–a*

The Trustee also asserts that the transfers made by the Judgment Debtor were fraudulent pursuant to § 273–a of the DCL. Section 273–a provides that "[e]very conveyance made without fair consideration when the person making it is a defendant in an action for money damages ... is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." DCL § 273–a. Thus, three elements are necessary to support a claim under this section: (1) the conveyance in question was made without fair consideration; (2) the transferor is a defendant in an action for money damages or a judgment has been docketed against the transferor; and (3) the defendant has failed to satisfy the judgment. *E.g., In re Fair*, 142 B.R. 628, 631 (Bankr. E.D.N.Y.1992).

Section 273–a provides an alternative basis for finding the conveyances in issue fraudulent as a matter of law. The first and third elements are easily satisfied. As set forth, the court has determined that the conveyances in question were made without fair consideration and it is plain that the Judgments are not satisfied. However, because the second element requires that the transferor be a defendant in an action for money damages or that a judgment be docketed, this section only provides an alternative basis for the transfers made after June 11, 1990, the date Adversary Proceeding I was commenced.

Accordingly, the court finds that the Trustee has satisfied all the elements of § 273–a and that, therefore, this section provides an alternative basis for finding that the questioned conveyances made after June 11, 1990 were fraudulent.

12. Thus, the following checks were fraudulently transferred:

| Check No. | Date | Amount |
|---|---|---|
| 538 | May 21, 1989 | $50,000 |
| 863 | July 18, 1990 | $16,500 |
| 864 | July 18, 1990 | $30,000 |
| 1018 | April 12, 1991 | $30,000. |

### C. New York Debtor and Creditor Law Section 276

In his third cause of action, the Trustee asserts that he is also entitled to summary relief under DCL § 276. Section 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." DCL § 276. As the statute makes clear, actual intent must be proven in order to prevail under this section.

In support of this cause of action, the Trustee assert that when the conduct of the defendants is viewed in its totality, a clear pattern of purposeful conduct will support a summary finding of actual intent to defraud. *See* Trustee's Mem. at 32–34. As part of the "general plan" to defraud his creditors, the Trustee points out that the Judgment Debtor admitted that he purposefully transferred his cash assets to E. Goetzmann to hinder and delay a creditor. When this transfer is coupled with the conveyances to his wife of assets in excess of $5.2 million for little or no consideration, "the existence of the Judgment Debtor's plan is crystalline."

■ The court, however, finds that Defendants have raised at least a triable issue with respect to the intent of the Judgment Debtor. The issue of intent or state of mind cannot be appropriately decided on this motion. *See, e.g., Wakefield v. Northern Telecom, Inc.,* 813 F.2d 535, 540 (2d Cir.1987) ("Summary judgment is usually inappropriate when ... state of mind is an issue."); *United States v. Paladin,* 539 F.Supp. 100, 104 (W.D.N.Y.1982) ("Because actual intent to defraud is a necessary element of a cause of action under section 276, summary judgment is inappropriate with respect thereto."). Here, while much evidence in the record indicates that the conveyances at issue were made with the requisite fraudulent intent, the affidavit submitted by the Judgment Debtor proffering alternative explanations for the conveyances suffices to raise a genuine issue of material fact. Accordingly, the Trustee's motion for a summary determination on his cause of action pursuant to § 276 must be denied.

### D. Debtor and Creditor Law Section 278

■ The Trustee also moves pursuant to § 278 to have the fraudulent conveyances set aside and for judgment against Respondents, as transferees of the assets. Section 278 provides, in pertinent part, that "[w]here a conveyance ... is fraudulent as to a creditor, such creditor ... may ... [h]ave the conveyance set aside ... to the extent necessary to satisfy his claim." DCL § 278(1)(a). Additionally, when "a conveyance is fraudulent under DCL § 273, the 'creditor may obtain judgment against any transferee to whom his debtor has transferred the property up to the value of the property.'" *United States v. Red Stripe, Inc.,* 792 F.Supp. 1338, 1344 (S.D.N.Y.1992) (quoting *De West Realty Corp. v. Internal Revenue Service,* 418 F.Supp. 1274, 1279 (S.D.N.Y.1976)). The judgment, however, is limited to the amount of the creditor's claim. *See De West Realty Corp.,* 418 F.Supp. at 1279.

■ Inasmuch as the court determined the conveyances in question were fraudulent, the court finds that the Judgment Debtor has an interest in the conveyed property and further, that the Judgment Debtor is both entitled to possession of such property and that the Trustee's rights to such property are clearly superior to those of Respondents. *See* N.Y. CPLR § 5225(b); *Beauvais v. Allegiance Securities, Inc.,* 942 F.2d 838, 840 (2d Cir.1991). Thus, in accordance therewith, the Trustee is entitled to set aside the assets transferred to S. Goetzmann pursuant to the Assignment Agreement to the extent necessary to satisfy the Judgments. The Trustee is also entitled to set aside the conveyances to E. Goetzmann in the form of checks delivered to him after January 13, 1989, to the extent necessary to satisfy the Judgments.

■ In addition, and also in accordance with the court's findings, the Trustee is entitled to judgment against Respondents, as transferees, in the amount of the Judgments limited by the value of the property that was fraudulently conveyed. Thus, the Trustee is entitled to judgment against S. Goetzmann for $416,491, which is the full amount of the

Judgments being enforced in this proceeding because the value of the assets that were fraudulently transferred exceed the value of the Judgments. The Trustee is entitled to judgment against E. Goetzmann in the amount of $126,500, which represents the amount of the checks that were transferred to him after January 13, 1989, the date CIS filed for bankruptcy. *See* fn. 12. The judgments against the transferees are enforceable to the extent the Trustee is unable to satisfy the Judgments with the assets set aside pursuant to DCL § 273.

### E. Attorneys' Fees Pursuant to Section 276–a

The Trustee asserts that he is entitled to attorneys' fees pursuant to DCL § 276–a. This section provides, in pertinent part, that attorneys' fees should be awarded when a conveyance "is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors." DCL § 276–a. The Trustee maintains that "the facts of this case are clear that the Judgment Debtor conveyed the assets at issue and the Respondents received the assets in issue with the actual intent to hinder, delay or defraud the Judgment Debtor's creditors." Trustee's Mem. at 36.

■ The court must deny the Trustee's request for attorneys' fees. Pursuant to § 276–a, "before awarding attorneys' fees against a defendant, whether he be the debtor or the transferee, the court must make an explicit finding of actual intent to defraud; imputed fraud does not satisfy § 276–a." *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (citing *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 126, 508 N.Y.S.2d 17, 20–21 (2d Dep't 1986) (rejecting the notion that a presumption of intentional fraud exists under § 276–a)). There exists two hurdles with the Trustee's request for attorneys' fees that the Trustee has failed to overcome. One, the court declined under DCL § 276 to make a finding of actual intent on the part of the Judgment Debtor. Two, while there does exist some authority to award attorneys' fees in an action based upon § 273–a, *see*

*Dixie Yarns, Inc. v. Forman,* 906 F.Supp. 929, 938 (S.D.N.Y.1995) (inferring the requisite intent to defraud under § 273–a to award attorneys' fees pursuant to § 276–a), the record here cannot support an explicit finding that the transferees acted with the requisite intent to hinder, delay, or defraud the Judgment Debtor's creditors. Accordingly, the court must deny the Trustee's motion for attorneys' fees.

### CONCLUSION

For the foregoing reasons, the court GRANTS the Trustee's motion pursuant to DCL § 273 and finds the assets transferred to S. Goetzmann after CIS filed for bankruptcy on January 13, 1989 were fraudulent conveyances. The court also finds the assets transferred to E. Goetzmann after CIS filed for bankruptcy were fraudulent conveyances.

The court further GRANTS the Trustee's motion pursuant to DCL § 273–a and finds the assets transferred to S. Goetzmann and E. Goetzmann after the commencement of Adversary Proceeding 1 on June 11, 1990 were fraudulent conveyances.

The court DENIES the Trustee's motion to set aside the conveyances pursuant to DCL § 276 because the actual intent of the Judgment Debtor cannot be determined on this motion for summary judgment.

Finally, the court DENIES the Trustee's motion for attorneys' fees pursuant to DCL § 276–a because the Trustee has failed to satisfy the requisite elements that would entitle him to his attorneys' fees.

The court instructs the Clerk of the Court to enter judgment in favor of the Trustee against S. Goetzmann in the amount of $416,491 and against E. Goetzmann in the amount of $126,500.

IT IS SO ORDERED.