Richard BEAUVAIS, Plaintiff–Appellee,

v.

ALLEGIANCE SECURITIES, INC.,
Irwin Frankel and Frank
Grillo, Defendants.

Richard BEAUVAIS, Petitioner–
Appellee,

v.

SECURITIES SETTLEMENT
CORPORATION, Respondent–Appellant.

No. 1755, Docket 91–7289.

United States Court of Appeals,
Second Circuit.

Argued June 26, 1991.

Decided Aug. 28, 1991.

Martin P. Unger, New York City (Doria G. Stetch, Gaston & Snow, of counsel), for respondent-appellant Securities Settlement Corp.

Robert J. Poulson, Jr., New York City, for petitioner-appellee Richard Beauvais.

Before CARDAMONE, MINER and MAHONEY, Circuit Judges.

CARDAMONE, Circuit Judge:

Plaintiff Richard Beauvais, a victim of securities fraud, sought to satisfy the remainder of an unpaid judgment rendered in his favor against his stockbroker Allegiance Securities, Inc. (Allegiance), and two of its representatives, Irwin Frankel and Frank Grillo, out of monies allegedly held on behalf of Allegiance by a third party—Securities Settlement Corporation (SSC, Securities Settlement, or appellant). Applying New York law, the district court asked whether the defendants had an interest in the money held by SSC and, after concluding they did, ordered SSC to turn over that money to Beauvais.

We observe at the outset that defendants' counsel persuaded the district court that Securities Settlement had agreed that it would set aside funds to secure defendants' obligation to plaintiff. Securities Settlement declares to the contrary, insisting it was not a party to the action between Beauvais and the defendants and was unaware of the representations made by de-

fendants' counsel that were put into the stipulation settling the case and accepted by the trial court as true. After making allowances, even large allowances, for counsel's zeal in representing defendants' interests, we think the results of his eloquence bear further examination in the remand we direct.

## BACKGROUND

On July 14, 1989 appellee Richard Beauvais commenced a securities fraud action against Allegiance and its registered representatives, Irwin Frankel and Frank Grillo, seeking to recover the sum of $40,000. Contemporaneously with the filing of the summons and complaint in that action, Beauvais sought and obtained an order to show cause seeking an attachment of defendant's assets, including a temporary stay enjoining the transfer of those assets, which it later served on SSC.

Appellant is a clearing broker, whose task is to perform back-office and record-keeping functions for retail broker-dealers like Allegiance. Retail broker-dealers are sometimes called introducing brokers or correspondents. Securities Settlement is a separate corporate entity from its correspondents; and its relationship with its correspondents—including Allegiance—is governed by a contract called a clearing agreement.

Under the clearing agreement, Allegiance used Securities Settlement's services to clear its own trades and those of its public customers. Allegiance was required to maintain a clearing deposit with SSC as security against any claims or losses Allegiance or any of its customers suffered. As paragraph 10(c) of the clearing agreement stated

(c) Authorization to charge—
Correspondent [Allegiance] authorizes SSC to charge any Correspondent Account maintained by SSC and any other assets of Correspondent held by SSC ... including, but not limited to, (i) any cost or expense resulting from failures to deliver or failures to receive securities, (ii) any losses resulting from unsecured debit balances in any Customer or Correspondent Account, and (iii) any amounts to which SSC is otherwise entitled pursuant to paragraph 10(a). Such charge may be made against any Correspondent Account or asset at any time and in such amount as SSC deems appropriate.

The record is unclear regarding the status of Allegiance's account with Securities Settlement when this action was filed in July, 1989. The balance of the trading account as of August 22, 1989 was approximately $17,000. In addition to this amount, Securities Settlement held a $25,000 clearing deposit to meet the obligations of Allegiance and its representatives.

On July 18, 1989—four days after the complaint was filed—Beauvais and the defendants entered into the stipulation settling the securities fraud action. Securities Settlement was not a party to that stipulation, nor did it participate in any of the negotiations leading up to it. Yet, the stipulation purported to obligate appellant to hold $15,000 as security for payment of the full amount owed by defendants, and required appellant to pay Beauvais the $15,000 in the event of default by defendants. This document was "so ordered" by the district court.

On or about August 4, 1989 defendants' counsel wrote a handwritten note representing to the district court and Beauvais that Securities Settlement had agreed to provide $25,000 toward settlement of the action instead of the $15,000 originally promised. Again, appellant had not been consulted with respect to its purported agreement, nor had it authorized defendants' counsel to make such representation.

Not too surprisingly, after an initial $5,000 payment to plaintiff Beauvais, defendants defaulted. Beauvais' counsel thereafter wrote appellant on August 9 and August 16, 1989 demanding that it pay Beauvais the $25,000 allegedly held "as collateral" for Allegiance. On August 15, 1989 the United States District Court for the Southern District of New York (Conboy, J.) issued a judgment against defendants in the amount of $40,000 together with $170 in costs and disbursements. The order contained no provision respecting ap-

pellant SSC. In August 1989 Allegiance went out of business, and SSC thereafter applied the funds held in Allegiance's correspondent account to cover charges Allegiance incurred while still in business.

On September 11, 1989 SSC was served with an Execution with Notice to Garnishee demanding that the August 15 Judgment against the defendants be satisfied out of Allegiance's property that it held. On September 14 Securities Settlement was notified by the Sheriff of the City of New York that it was required to specify the property it owed Allegiance. Appellant was served with an order to show cause on September 25, by which Beauvais sought a turnover order, pursuant to New York's CPLR 5225(b) (McKinney 1991), directing it to pay Beauvais $35,170—the balance of the judgment against the defendants, after deducting the $5,000 defendants initially paid. Appellant says this was the first it learned of the court-approved settlement stipulation.

In an opinion and order dated July 17, 1990, the district court (Keenan, J.) granted Beauvais a turn-over order directing appellant to pay Beauvais the full $35,170, plus interest. The trial court said that "the critical test [under 5225(b)] is whether the judgment debtor is entitled to possession of the property or funds in question." It then went on to find that "as of the date of the settlement between plaintiff and Allegiance, SSC did in fact possess on behalf of Allegiance funds equal to or greater than the amount of plaintiff's judgment against Allegiance," and that "Allegiance has an interest in the above-mentioned funds held by SSC." The district court therefore concluded Beauvais was entitled to a turn-over of those funds.

Judgment was entered accordingly on September 20, 1990. Appellant's motion for reargument was denied by the district court in an opinion dated February 19, 1991. This appeal followed.

## DISCUSSION

SSC does not contest defendants' liability arising from their default under the stipulation, to which it was not a party. The question is whether the default judgment entered against the defendants may be satisfied by execution on money in Securities Settlement's possession.

Federal Rule of Civil Procedure 69(a) (Execution) provides in relevant part:

(a) In General. Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held....

Because the instant action was before the Southern District of New York, plaintiff's motion is governed by the procedures set forth in New York's Civil Practice Law and Rules. CPLR 5225(b) states:

(b) *Property not in the possession of judgment debtor.* Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, ... where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money ... to a designated sheriff.

■ By its express language, the rule provides for a two-step analysis in determining whether property belonging to a judgment debtor—but in the possession of a third party—should be turned over to a judgment creditor. First, it must be shown that the judgment debtor "has an interest" in the property the creditor seeks to reach. Where this first step is satisfied, the trial court must, second, then make one of two findings: it must find either that the judgment debtor is "entitled to the possession of such property," *or* it must find that "the judgment creditor's rights to the property are superior" to those of the party in whose possession it is. Only after both steps of the analysis are demonstrated may

the trial court order the transferee to turn over the property to the judgment creditor, here plaintiff Beauvais. *See Key Lease Corp. v. Manufacturers Hanover Trust Co.*, 117 A.D.2d 560, 561–62, 499 N.Y.S.2d 66, 68 (1st Dep't 1986).

■ The district court did not complete both steps of this analysis. Instead, it found initially that appellant held approximately $37,000 on behalf of Allegiance, and that Allegiance had an interest in those funds. SSC does not contest this finding, conceding that Allegiance had such an interest. That completed the first step. But the district court then concluded that "because the sum of these funds is equal to or greater than the amount of plaintiff's judgment against Allegiance," plaintiff is therefore entitled to a turn-over of those funds. This latter finding—while it may ultimately prove correct—skipped a necessary step.

In order to grant Beauvais the relief he seeks, the district court must find, under the statute's language, that "the judgment debtor [Allegiance] is entitled to the possession of such property [the funds held by SSC]." CPLR 5225(b). A debtor obviously has an interest in its own money or property held by a third party, but that does not necessarily mean it is entitled to *possession* of that money or property. For example, here Allegiance had an interest in the funds held by appellant, but it may not have been entitled to possession of those funds because the clearing agreement may have given appellant the right to apply them to Allegiance's unpaid balance for services rendered to it or its customers. Under these circumstances, Beauvais would have no right to the turn-over remedy because appellants would have a prior lien on the funds. *See Key Lease Corp.*, 117 A.D.2d at 562, 499 N.Y.S.2d at 68; *Cohen v. First Nat'l City Bank*, 49 Misc.2d 141, 144, 267 N.Y.S.2d 146, 150–51 (N.Y.Civ.Ct.1966). This in fact is exactly what Securities Settlement claims the circumstances are, and the words of the clearing agreement set forth above appear at first glance to support its contention.

The trial court's finding that Allegiance had an interest in the money held in the trading and clearing balance accounts does not lead inexorably to the conclusion that Allegiance was entitled to possession of this money. Because the necessary determination as to whether Allegiance was entitled to possession of the funds in question was never made, we must remand the matter for the district court to take evidence bearing on this issue, and after that to make a determination.

In resolving this issue, the trial court should evaluate the meaning of the clearing agreement between Securities Settlement and Allegiance, and decide whether it provided the former with a lien on the funds it held on Allegiance's behalf. It should clarify the extent, if any, that the agreement gave appellant the right to apply the disputed funds to Allegiance's existing obligations for services it rendered (or based on other grounds provided for in the agreement). It should also determine how much, if any, of the $37,000 allegedly held by appellant was so applied. These determinations will involve careful review of the financial records to discover when the services were rendered.

As it now appears in the record before us, the account information is confusing. The district court should have the first opportunity to unravel its meaning after further development of the record by the parties. Further, it should also be decided in the first instance by the district court when the right to assert appellant's claimed lien arose: SSC says that right occurred at the time Allegiance signed the clearing agreement; Allegiance contends that such right was not claimed by SSC until long after the restraining order was obtained in July 1989. We add that if the court finds Allegiance was not entitled to the funds in SSC's possession, it should determine whether plaintiffs' rights to them are superior to those of SSC, as CPLR 5225 prescribes.

## CONCLUSION

The judgment of the district court is reversed, and the matter remanded for fur-

ther proceedings consistent with this opinion.