Commonwealth of the NORTHERN MARIANA ISLANDS, Plaintiff,

v.

William H. MILLARD, Defendant.

Commonwealth of the Northern Mariana Islands, Plaintiff,

v.

Patricia H. Millard, Defendant.

Nos. 11 Misc. 99, 11 Misc. 100.

United States District Court, S.D. New York.

Feb. 27, 2012.

Michael Sangyun Kim, Kobre & Kim LLP, New York, NY, for Plaintiff.

*MEMORANDUM*

JED S. RAKOFF, District Judge.

In 1994, plaintiff, the Commonwealth of the Northern Mariana Islands ("the Commonwealth"), obtained default judgments (the "Judgments") for over $36 million against William and Patricia Millard ("the Millards") based on allegations of unpaid taxes. In March and April 2011, the Commonwealth registered the Judgments in this Court and in the Middle District of Florida pursuant to 28 U.S.C. § 1963. The Commonwealth contends that, with interest, the Millards now owe the Commonwealth more than $118 million. Plaintiff Judgment Creditor's Memorandum in Support of its Application by Order to Show Cause for Turnover Order ("Pl. Mem.") at 3.

The Commonwealth now seeks a turnover order pursuant to N.Y. C.P.L.R. § 5225(b) against a Merrill Lynch account in the name of the Millard Foundation (the "Foundation"). The turnover application was brought against Merrill Lynch as the garnishee, but the account belongs to the Millard Foundation (the "Foundation"). The Commonwealth argues that the Foundation is used as a "front" by the Millards, including as a means of moving their money from offshore accounts to their children in the United States. On January 18, 2012, Judge Keenan sitting in the Miscella-

neous Part of this Court ("Part I"), signed an order that instructed Merrill Lynch and/or the Millard Foundation to respond to the turnover application by January 25, 2012.

In response, Merrill Lynch took no position on the turnover application, Affirmation of Howard Myers III, Dkt. 31, but the Millard Foundation submitted a timely brief. The first line of that brief stated, "The Millard Foundation ... an intervening non-party to this proceeding, respectfully requests that the Court deny the application". The Millard Foundation's Memorandum of Law in Opposition to Plaintiff's Order to Show Cause ("Intervenor Mem.") at 1. Although the parties initially disputed whether the Foundation had in fact moved to intervene, this Court (to which the matter had been referred by Judge Keenan because this judge was now sitting in Part I) gave the Foundation an opportunity to clarify its position at oral argument. The Foundation declared that it did want to intervene, although it also wished to raise an objection to the Court's exercise of personal jurisdiction over the Foundation (as well as other objections, described below). *See* Transcript of Oral Argument, Feb. 9, 2012 ("2/9/12 Tr.") at 3.

On February 17, 2012, this Court issued a "bottom-line" order setting forth its rulings on four preliminary matters and referring the matter to Judge Wood (who will then be sitting in Part I) for an evidentiary hearing on March 27, 2012. This Memorandum sets forth the reasons for those rulings.

■ *First,* the Court concludes that the turnover application was properly brought as a motion rather than a special proceeding. This proceeding is governed by Fed-eral Rule of Civil Procedure ("FRCP") 69(a), which states in part that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed.R.Civ.P. 69(a). Here, the relevant state law procedure is found in N.Y. C.P.L.R. § 5225(b). That statute provides that:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff ... The court may permit the judgment debtor to intervene in the proceeding.

Nearly every court in this Circuit to consider the issue has held that parties can bring a motion under FRCP 69(a), rather than instituting a special proceeding under the New York state law.[1] *See, e.g., S.E.C. v. Colonial Inv. Management LLC,* No. 07 Civ. 8849, 2010 WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2011); *Mitchell v. Lyons*

---

1. There appears to be only one case to the contrary. *See Runaway Dev. Group v. Pentagen Techs. Int'l Ltd.,* 396 F.Supp.2d 471 (S.D.N.Y.2005). The Foundation relies nearly exclusively on this case, but the court in *Runaway* did not provide any explanation for its decision on this issue.

*Professional Services, Inc.*, 727 F.Supp.2d 120, 122–23 (E.D.N.Y.2010). In particular, this Court agrees with Judge Cogan's thorough explication of this issue in *Mitchell*, and will not reiterate that entire analysis here. As Judge Cogan concluded, "[a] 'special proceeding' is a creature of New York practice that although brought as a distinct legal action, has more in common with motion practice than it does with a plenary action." *Id.* at 122–23.

Moreover, in *Chambers v. Blickle Ford Sales, Inc.*, 313 F.2d 252 (2d Cir.1963), the Second Circuit stated, albeit in dicta:

> Under Connecticut practice, a separate action would be required in the nature of a scire facias against the alleged debtor or trustee of the judgment debtor, requiring a hearing and judgment separate from the original action. The procedure followed here, more in the nature of one supplementary to enforcement of a judgment, accords with the spirit of the Rules and seems to be a sufficiently close adherence to state procedures.

*Id.* at 256.[2]

In addition, here, as in *Mitchell*, the Foundation has not pointed to any prejudice it will suffer as a result of the claims being brought as a motion rather than as a special proceeding. *See Mitchell*, 727 F.Supp.2d at 125.

■ *Second*, the proceedings need not be stayed in light of an action filed by the children of the judgment debtors currently pending in the Middle District of Florida. In that action, the children of the judgment debtors—Michael and Elizabeth Judith and Barbara and Paul Logan (collectively the "Millard children")—seek to attack the validity of the underlying default judgments. *See* Complaint, Dkt. 1.,

*Judith et al. v. Commonwealth of the N. Mariana Is.*, 6:11 Civ.1927 (M.D.Fla.2011). The Commonwealth has moved to dismiss that action in its entirety, *Judith*, Dkt. 10, and a hearing on that motion was held on February 17, 2012. *Judith*, Dkt. 27. The Foundation provides no legal support for its argument that this case should be stayed, and there does not appear to be any. In fact, the court in the Middle District of Florida refused to stay the execution of the judgments and granted the Commonwealth's request for writs of execution while the case filed by the Millard children was pending. Order, Dkt. 30, *Commonwealth of N. Mariana Is. v. Millard*, 11 Misc. 105 (M.D.Fla.2011). Moreover, the underlying case was filed in this Court well before the Millard Children filed their action in the Middle District of Florida.

Furthermore, the judgment debtors have not even appeared in the action in the Middle District of Florida challenging the validity of the judgments. When the Millards's former attorney, Terry Giles, Esq., brought an action attacking the validity of the judgments in this court, Chief Judge Preska observed, "[w]hat you believe about the judgment is wholly irrelevant. The judgment debtors are not here. They are not yelling about the judgment. They know where we are." Declaration of Michael Kim ("Kim Decl.") ¶ 21. The Court agrees with the Commonwealth that "[u]ntil the Judgment debtors themselves appear to contest the Judgments ... and until they post security to stay execution pursuant to Rule 62(b), the Commonwealth is entitled to continue its ... post-judgment efforts." Plaintiff Judgment Creditor's Reply Memorandum in Further Sup-

---

**2.** The Ninth Circuit and the Seventh Circuit have also employed this flexible approach to Rule 69(a). *See Thomas, Head & Greisen Employees Trust v. Buster*, 95 F.3d 1449 (9th Cir.1996); *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221 (7th Cir.1993).

port of its Application for Turnover Order ("Pl. Reply Mem.") at 10.

*Third,* the Court has previously found that the Commonwealth has plausibly alleged that (a) the Millards have an interest in the Account and (b) that the Commonwealth has a right of possession to the funds in the Account superior to that of the Foundation. *See* Transcript of Oral Argument, Feb. 10, 2012 ("2/10/12 Tr.") at 12. Having met that threshold, the relevant question is whether the Court has *in personam* personal jurisdiction over the *garnishee* Merrill Lynch rather than over the Foundation.

■ Under New York law, when a turnover application is brought under CPLR 5225(b), the creditor is proceeding against a person, in order to "demand that" this person (the garnishee) "convert property for money for payment to a creditor." *Koehler v. Bank of Bermuda Ltd.,* 12 N.Y.3d 533, 883 N.Y.S.2d 763, 911 N.E.2d 825, 829 (2009). Therefore, the court need only have *in personam* jurisdiction over the *garnishee;* it does not need to have personal jurisdiction over the *judgment debtor* or *in rem* jurisdiction over the property in question. *JW Oilfield Equip., LLC v. Commerzbank, AG,* 764 F.Supp.2d 587, 592 (S.D.N.Y.2011); *Koehler,* 883 N.Y.S.2d 763, 911 N.E.2d at 829.

What distinguishes the instant case from *Koehler* is that the money in question is in an account ostensibly belonging to the intervenor, the Foundation, rather than an account belonging to the judgment debtors. If the fact that the funds were in an account in the name of the Foundation were alone sufficient to change the entire personal jurisdiction inquiry, such that personal jurisdiction was required over both the garnishee and the owner of the

funds, then judgment debtors could far too easily avoid collection in New York courts.[3] They could simply set up a shell corporation or foundation without contacts in New York and put their money in its name, and then the money would be effectively unreachable. In this case, the relevant inquiry is still whether the court has in personam jurisdiction over the garnishee, not whether it has jurisdiction over either the judgment debtor or the third party who allegedly possesses the money in which the debtor has an interest.

■ The Foundation is right, however, that, absent safeguards, this procedure could well be abused by judgment creditors seeking to drag foreign entities into court simply by bare allegations that they possess the money of a judgment debtor. Therefore, the judgment creditor must meet a threshold sufficient to convince the Court that the judgment creditor can prevail on the merits. On the merits, the Second Circuit has set forth a two-step process for cases in which a judgment creditor alleges that property belongs to a judgment debtor but is in the hands of a third party. *See Beauvais v. Allegiance Sec., Inc.,* 942 F.2d 838, 841 (2d Cir.1991). In order for the creditor to prevail:

> First, it must be shown that the judgment debtor "has an interest" in the property the creditor seeks to reach. Where this first step is satisfied, the trial court must, second, then make one of two findings: it must find either that the judgment debtor is "entitled to the possession of such property," or it must find that "the judgment creditor's rights to the property are superior" to those of the party in whose possession it is.

*Id.*

At this stage, of course, a creditor need not prove these elements of its case.

---

3. New York law is "well settled that this statute may be used to ... assert alter ego liability." *Mitchell,* 727 F.Supp.2d at 123.

Rather, similar to the standards for filing a complaint, a creditor must plausibly allege that it can meet its burden. Here, as mentioned, this Court has already determined that the Commonwealth had met this threshold. *See* 2/10/12 Tr. at 12. Therefore, because there is no dispute that the Court does have *in personam* jurisdiction over the garnishee, the personal jurisdiction questions raised by the intervenor are not relevant.

*Fourth,* the Commonwealth wishes to subpoena the Millards to testify at the evidentiary hearing on March 27th as the officers of the Millard Foundation. Before the Court had decided whether the Millard Foundation could intervene, the Millard Foundation objected to any such subpoena, primarily on the ground that it was not a party to the proceeding and subpoenas could not issue for the officers of non parties located more than 100 miles from the courthouse. Supplemental Brief of the Millard Foundation Re Jurisdictional Defects ("Intervenor Supp. Mem.") at 7–8. The Millards reside in the Cayman Islands. *Id.* at 8.

■■■ Now that the Millard Foundation is a party to the case, it is not clear whether it maintains its objection to the issuance of subpoenas for the testimony of the Millards. Regardless, any such objection is unavailing. A court must quash or modify a subpoena that "requires a person who is *neither a party nor a party's officer* to travel more than 100 miles from where that person resides, is employed, or regularly transacts business." Fed.R.Civ.P. 45(c)(3)(A)(ii) (emphasis added).[4] Therefore "corporate officers of a party may be subpoenaed and required to travel more than 100 miles from where they reside, are

employed, or regularly transact business." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.,* 262 F.R.D. 293, 302 (S.D.N.Y.2009). According to the Millard Foundation's most recent available tax filing, the Millards are the sole corporate officers of the Foundation. Declaration of Katherine Gillespie ("Gillespie Decl."), Ex. 13, 990–PF (2009) Tax Return of the Millard Foundation, at 6. William Millard is the President and Treasurer of the Foundation and Patricia Millard is the Director and Secretary. *Id.* Therefore, the Millards may be subpoenaed to testify at the evidentiary hearing on March 27th.

SO ORDERED.

---

4. Rule 45(b)(2), provides that "[s]ubject to Rule 45(c)(3)(A)(ii), a subpoena may be served at any place ... outside [the] district [of the issuing court] but within 100 miles of the

place specified for the deposition, hearing, trial, production, or inspection." Fed. R.Civ.P. 45(b)(2).