Gary LaBARBERA and Theodore King, as Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Vacation and Sick Leave Trust Fund, and the Local 282 Job Training Trust Fund, Plaintiff,

v.

AUDAX CONSTRUCTION CORP., Formula 1 Transport, Inc., Ferrara Equipment, Inc., and Sal Ferrara, Defendants.

No. 02–cv–582 (SLT)(GRB).

United States District Court, E.D. New York.

Jan. 10, 2013.

Bruce S. Levine, David Ronald Hock, Joseph J. Vitale, Michael Seth Adler, Cohen, Weiss and Simon LLP, New York, NY, for Plaintiff.

Gerald Dandeneau, Bart & Schwartz, LLP, Gerald V. Dandeneau, Dandeneau & Lott, Melville, NY, for Defendants.

## MEMORANDUM AND ORDER

TOWNES, District Judge:

Gary LaBarbera and Theodore King ("Plaintiffs"), as trustees and fiduciaries of the Local 282 Welfare, Pension, Annuity, Job Training and the Vacation and Sick Leave Trust Funds (the "Funds"), brought suit pursuant to the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1132, and the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185, against defendant, Audax Construction Corp. ("Audax"), a signatory to a collective bargaining agreement with Local 282 of the International Brotherhood of the Teamsters, for alleged unpaid contributions to the Funds on behalf of third-party employees.[1] Plaintiffs successfully moved for summary judgment on those issues as to Audax's liability and, on May 29, 2009, a partial judgment (the "Partial Judgment") was entered against Audax.

Plaintiffs have now moved pursuant to Federal Rule of Civil Procedure 69, ("Rule 69"), invoking New York Civil Procedure Law ("CPLR") §§ 5225, 5227, and New York Debtor and Creditor Law ("DCL") §§ 273, 273–a, and 278, in which they essentially seek a turnover order to set aside fraudulent conveyances and collect the unsatisfied judgment from Audax's shareholders, Nicholas Nubile, Nunzio Montoni, and Victor DiRe (collectively, the "Audax Shareholders"). Plaintiffs also seek to amend/supplement their complaint to add the Audax Shareholders as parties and assert individual state law claims against them as well as to substitute two current trustees in lieu of Plaintiffs, as they are no longer trustees. In response, Audax asserts that this court lacks subject matter jurisdiction to entertain Plaintiff's fraudulent conveyance claims as they seek to shift liability to the Audax Shareholders. Audax also opposes Plaintiffs' motion to amend/supplement to the extent it seeks to name the Audax Shareholders as additional defendants. Although not parties to the action, the Audax Shareholders also submitted letters to the court asserting that the court lacks personal jurisdiction over them. For the reasons that follow, the court denies Plaintiffs' motion to the extent it seeks enforcement of the Partial Judgment and grants their motion to the extent it seeks to amend/supplement the complaint, but only as to Plaintiffs' request to replace the named trustees.

### I. BACKGROUND RELEVANT TO THE INSTANT MOTIONS

Plaintiffs commenced this lawsuit in January of 2002, at which time Audax was not a named defendant. In April of 2004,

---

**1.** Plaintiffs had initially brought suit against Ferrara Equipment, Inc. and Formula 1 Transport, Inc., as well as Ferrara's owner, Sal Ferrara. However, each of these defendants entered into a settlement agreement with Plaintiffs and are no longer parties to this lawsuit.

Plaintiffs amended their complaint to include Audax as a defendant and alleged, in part, that Audax and the original defendants integrated their operations in an ongoing scheme to defraud the Funds by underpaying their joint and/or individual contractual obligations to contribute to the Funds. (Amended Complaint, Introduction.) At all times relevant to this action, Audax was controlled by its sole shareholders, the Audax Shareholders.

Prior to Plaintiffs' filing of the amended complaint, Audax was a solvent entity. Upon being named as a defendant in April of 2004, however, Plaintiffs allege that the Audax Shareholders took actions that rendered Audax insolvent to prevent it from being able to satisfy any potential judgment against it. In this regard, Plaintiffs note that at the end of the 2004 tax year, Audax reported more than $2.5 million in total assets and more than $2.1 million in retained earnings, while it distributed approximately $185,000 to the Audax Shareholders (other than dividend distributions), who each received approximately $62,000. However, by the end of the 2005 tax year, Audax reported little more than $100,000 in total assets and $370,000 in retained earnings, while it distributed approximately $2.9 million to the Audax Shareholders (other than dividends), who each received about $976,000. Then, by the end of the 2006 tax year—on Audax's final return—Audax reported zero in total assets and $270,000 in retained earnings, while it distributed approximately $250,000 to the Audax Shareholders (other than dividends), who each received about $80,000. Plaintiffs allege that these transfers, which total approximately $3 million dollars to each Audax Shareholder, fraudulently stripped Audax of its assets, thereby rendering it judgment proof.

On September 5, 2007, 2007 WL 2582103, the court, *inter alia*, granted Plaintiffs' motion for summary judgment, finding Audax liable for underpayments to the Funds on behalf of Ferrara Equipment, Inc.'s employees. (Document No. 99). In addition, due to outstanding questions regarding the specifics of Audax's contribution obligations, the court ordered Audax to submit to an audit, upon the completion of which, the court would determine to what damages, interest, and attorney's fees Plaintiffs were entitled. (*Id.* at 25–26.) On May 29, 2009, the Partial Judgment was entered against Audax, ordering it to make the following payments to Plaintiffs: (1) $538,643.18 in delinquent contributions, (2) $514,874.23 in interest through June 30, 2008, (3) interest from July 1, 2008, until the date of payment on $406,017.45 at a rate of 16% per annum and on $132,625.73 at a rate of 18% per annum, (4) liquidated damages in an amount equal to the total interest due, (5) audit costs of $14,244.31, and (6) attorney's fees of $93,051.50. (Document No. 116.) Audax was also ordered to submit the books and records of its affiliated companies for audit and, upon the completion of the audit, the court would determine to what damages and other sums, if any, Plaintiffs were entitled. (*Id.*) The Partial Judgment remains unsatisfied and the affiliated entities' books and records have not been submitted to an audit.[2]

---

2. Plaintiffs contend, based on the deposition of Audax's accountant, Kenneth Eisenberg, that Audax's affiliates' books and records have been destroyed. (*See* Ex. K (Attached to Plaintiffs' Motion to Enforce Judgment) at 29–30) (noting that Eisenberg believed these documents were shredded because he advised Audax that they typically only need to keep records for three years.) Plaintiffs, however, do not appear to request any relief in connection with Audax's failure to provide these records. Moreover, to the extent Plaintiffs suggest such facts are relevant to demonstrate the Audax Shareholders' fraudulent intent,

## II. PROCEDURAL RULES

■ Plaintiffs bring this action to enforce the Partial Judgment against the Audax Shareholders pursuant to Federal Rule of Civil Procedure 69. New York state rules of procedure govern such enforcement actions. *See* FED.R.CIV.P. 69(a)(1) ("[a] money judgment is enforced by a writ of execution," the procedure for which "must accord with the procedure of the state where the court is located."). CPLR § 5225(b) provides, in relevant part,

Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money ... in which the judgment creditor has an interest, or against a person who is a transferee of money ... from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require the person to pay the money or so much of it as sufficient to satisfy the judgment, to the judgment creditor.... Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail.

CPLR § 5227 similarly provides:

Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon

maturity ... or it may direct that a judgment be entered against such person in favor of the judgment creditor ... Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested.

These provisions provide a means of obtaining judgments against the recipient of a fraudulent conveyance and have been described as "essentially interchangeable." *Phoenician Trading Partners LP v. Iseson*, 2004 WL 3152394, at *2–3 (E.D.N.Y. Dec. 11, 2004) (citation omitted). "A petition pursuant to [these provisions] may be decided on the basis of the parties' submissions; however, disputed issues of material fact require a hearing or trial." *Marenyi v. Packard Press Corp.*, 1994 WL 16000129, at *5 (S.D.N.Y. June 9, 1994).

## III. DISCUSSION

### A. *Plaintiffs' Motion to Enforce the Partial Judgment*

1. *Whether Plaintiff's Fraudulent Conveyance Claims Fall Within the Court's Ancillary Jurisdiction*

As a threshold issue, the court considers Audax's argument that it lacks subject matter jurisdiction over Plaintiffs' motion to enforce the Partial Judgment against the Audax Shareholders. Plaintiffs contend that the court has ancillary jurisdiction to consider their motion.[3] The court agrees.

---

and are therefore relevant to their individual state law claims against them, the court need not consider them because, for reasons explained below, it denies Plaintiffs' motion to amend or supplement their complaint and those claims are therefore not before it.

**3.** The court notes that it is immaterial to the question of the court's ancillary jurisdiction that Plaintiffs have raised their fraudulent

conveyance claims in the same action that gave rise to the judgment rather than in a separate action against the Audax Shareholders. *See Epperson v. Entertainment Express, Inc.*, 242 F.3d 100, 106 n. 6 (2d Cir.2001) (finding immaterial whether fraudulent conveyance claims are brought as a supplementary proceeding in the same action or as a separate action given that the "important dis-

In *Peacock v. Thomas,* 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996), the Supreme Court described the breadth of a "federal court's inherent power to enforce its judgments" through the exercise of ancillary jurisdiction over third parties. *Id.* at 356, 116 S.Ct. 862. The Court observed that district courts have jurisdiction over a "broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Id.* at 356, 116 S.Ct. 862. Without such authority, the Court reasoned, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Id.* At the same time, the Court defined the outer limits of the federal courts' expansive enforcement power, holding that district courts lack ancillary jurisdiction over actions that seek "to impose liability for a money judgment on a person not otherwise liable for the judgment." *Id.* at 351, 116 S.Ct. 862.

██ In *Epperson v. Entertainment Express, Inc.,* 242 F.3d 100 (2d Cir.2001), the Second Circuit clarified the constraints placed on district courts' ancillary jurisdiction by the Supreme Court's decision in *Peacock.* The Second Circuit noted that following *Peacock,* district courts lack ancillary jurisdiction over "claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to shift liability." *Id.* at 106. In contrast, the court explained, *Peacock* does not preclude district courts' ancillary jurisdiction over a judgment creditor's effort to reach "assets ... found in the hands of a third party," if those assets were fraudulently conveyed to the third party by the

judgment debtor. *Id.* at 107 (holding that, because claims for fraudulent conveyance "operate as simple collection mechanisms ... [and] do not present a substantive theory seeking to establish liability on the part of a new party not otherwise liable" they are "within the scope of the enforcement jurisdiction of the district court."). Here, through their assertions that Audax fraudulently conveyed its assets, Plaintiffs seek to set aside certain conveyances and collect the judgment entered against Audax by tracing Audax's assets into the hands of related third parties, *i.e.,* the Audax Shareholders. As Plaintiffs' motion seeks only to enforce a judgment rather than to "raise an independent controversy with a new party," *id.* at 106, the court has jurisdiction to consider these claims.

Moreover, the court finds unavailing Audax's attempt to recast Plaintiffs' fraudulent conveyance claims as claims that shift liability from Audax to its shareholders. Audax argues that Plaintiffs are asserting new claims, which are unrelated to the ERISA and LMRA claims that were the subject of the amended complaint, and that seek to hold the Audax Shareholders individually liable for violating provisions of the DCL and the New York Business Corporation law ("BCL"). (*See* Audax's Opposition to Plaintiffs' Motion to Enforce Judgment ("Audax Opp.") at 10 (stating that Plaintiffs' motion seeks to hold the Audax Shareholders liable as "alter egos or to piece the corporate veil of the judgment debtor"). This misconstrues Plaintiffs' motion. To be sure, Plaintiffs, in seeking to amend their complaint to include the Audax Shareholders, have indicated several state law claims they wish to assert against these shareholders and allege several state law violations for which they believe the Audax Shareholders are

---

tinction is not whether the claim is brought in a second action but whether it seeks to im-

pose liability for the underlying judgment on a new party.'').

personally liable. However, those claims should not be confused with Plaintiffs' claims pursuant to DCL §§ 273, 273–a, and 278, which seek only to set aside the conveyances from Audax to the Audax Shareholders that Plaintiffs argue unlawfully rendered Audax insolvent and unable to satisfy the Partial Judgment against it and which are properly within this court's ancillary jurisdiction. *See Epperson,* 242 F.3d at 106 (noting that courts have jurisdiction over fraudulent conveyance claims that "do not seek to hold [third parties] liable for the existing judgment," but rather "seek only to void the allegedly fraudulent conveyances of [the defendant] to and among [these third parties], in order to ensure the collectibility of the ... judgment against [the defendant].").  At least one other court in this circuit has reached this same conclusion. *See Hassett v. Goetzmann,* 217 B.R. 9, 14 (N.D.N.Y.1998) (district court concluding post-*Peacock* with no discussion that it had ancillary jurisdiction to consider judgment creditor's fraudulent conveyance claims brought under DCL §§ 273, 273–a, and 278).  Accordingly, the court may consider Plaintiffs' claims that Audax fraudulently transferred its assets to the Audax Shareholders to avoid judgment. *See id.* (noting that "courts have permitted judgment creditors to pursue, under the ancillary enforcement jurisdiction of the court, the assets of the judgment debtor even though the assets are found in the hands of a third party.")

### 2. *Arguments Asserted by the Audax Shareholders*

Notwithstanding that this court has subject matter jurisdiction over Plaintiffs' claims, the Audax Shareholders argue Plaintiffs' motion to enforce the Partial Judgment against them cannot be granted. Although not parties to the action, these shareholders have submitted to the court, through their attorneys, letters asserting that Plaintiffs' fraudulent conveyance claims against them cannot proceed because (1) the court lacks personal jurisdiction over them, and (2) Plaintiffs are required to pursue their claims against them in a separate proceeding. In light of these arguments, the court must answer the following two questions: (1) did Plaintiffs, by pursuing enforcement of the Partial Judgment by motion and not by separate special proceeding, bring their fraudulent conveyance claims in an improper form, and (2) if Plaintiffs did bring their claims in an improper form, is that defect fatal to Plaintiffs' motion or may the court consider the motion in lieu of requiring Plaintiffs to initiate a special proceeding.

■  "A 'special proceeding' is a creature of New York practice that although brought as a distinct legal action, has more in common with motion practice than it does with a plenary action." *Mitchell v. Lyons Prof. Servs., Inc.,* 727 F.Supp.2d 120, 122 (2010).  To commence a special proceeding, a petitioner typically serves a notice of petition or show cause order on a person in possession or custody of money or against a person who is a transferee of money. *Id.* Such a proceeding "can be used only where the State Legislature has authorized it for the presentation of a particular type of legal issue or to obtain a particular form of relief." *Id.* (citing David D. Siegel, New York Practice § 547 *et seq.* (4th ed.2005)); *see also* Joseph M. McLaughlin, N.Y. C.P.L.R. § 103, Practice Commentaries, C103:2.  With regard to the special proceeding provided for in sections 5225 and 5227 of the CPLR, "it is well established that it may be used to attack fraudulent transfers without the need to resort to a plenary action." *Id.* at 123.

■  Special proceedings have no federal analogue, *SEC v. Colonial Inv. Mgmt.*

*LLC,* 2010 WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2010), and "motions [brought under Rule 69] are not special proceedings brought under New York law." *Saregama India, Ltd. v. Mosley,* 2012 WL 955520, at *1 (S.D.N.Y. Mar. 20, 2012). Despite the fact that "special proceedings in the sense used in the CPLR are unknown in federal courts," *id.,* the district court in *Mitchell v. Lyons Prof. Servs.* indicated that it is technically incorrect for a party to seek via a Rule 69 motion property in the hands of a third party to satisfy a judgment against a judgment debtor. *Mitchell,* 727 F.Supp.2d at 123. Rather, proper procedure dictates that the party seek the property via a special proceeding. *Id.; see also Domino Media, Inc. v. Kranis,* 9 F.Supp.2d 374, 383 n. 53 (S.D.N.Y.1998) (noting that although the New York courts may, upon a motion, direct a person in possession of property of the judgment debtor to turn the property over to the judgment creditor, "in order to obtain property of the judgment debtor which is in the possession of third parties … *it often is necessary* to commence a special proceeding—ordinarily an independent litigation."). Plaintiffs therefore pursued enforcement of the Partial Judgment in an improper form, *i.e.,* by motion.

Despite the fact that a motion is not the correct form to bring an action against a nonparty transferee to enforce a judgment owed, such an error is not necessarily fatal to Plaintiffs' motion. Rather, CPLR § 103 and its accompanying supplementary practice commentaries indicate that courts shall deem the motion a special proceeding, so long as the court has jurisdiction over the parties and it is "appropriate in the interests of justice." *See* N.Y. C.P.L.R. § 103 (*"If a court has obtained jurisdiction over the parties,* a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form … If the court finds it appropriate *in the interests of justice,* it may convert a motion into a special proceeding, or vice versa, upon such terms as may be just." N.Y. C.P.L.R. § 103 (emphasis added)); Vincent C. Alexander, N.Y. C.P.L.R. § 103, *Supplementary Practice Commentaries,* C103:3 ("[I]f a party applies for judicial relief by way of a motion when proper procedure would require the commencement of a special proceeding, or vice versa, the court can simply treat the matter as having been raised by the appropriate mechanism and proceed to the merits of the application."). This approach has been applied by federal courts in actions where personal jurisdiction has either been conceded or is simply not at issue to allow requests for turnover orders brought pursuant to a Rule 69 motion that invokes CPLR §§ 5225 or 5227 to proceed in federal court without need for the movant to resort to a special proceeding in state court. *See Mitchell,* 727 F.Supp.2d at 123 ("If a party *mistakenly* seeks relief by motion in an action when it should be by special proceeding, the Court may simply deem the motion a special proceeding, if it has jurisdiction over the parties.") (emphasis added); *Saregama,* 2012 WL 955520, at *1 ("[T]he fact that the Judgment Creditors did not seek turnover orders through special proceedings does not mandate the denial of these motions [brought pursuant to Rule 69]."); *see also Trust v. Kummerfeld,* 153 Fed.Appx. 761, 762–63 (2nd Cir. 2005) (unpublished summary order) (concluding in case where personal jurisdiction was not at issue that motion brought pursuant to Rule 69 "was properly brought as a special proceeding under CPLR § 5225.")

The court's inquiry as to whether it may deem Plaintiffs' motion a special proceeding is therefore confined to whether the court has personal jurisdiction over the Audax Shareholders and whether such

conversion is appropriate in the interests of justice. The supplementary practice commentaries to section 103 elaborate that the "interests of justice" standard to be followed suggests that before a court may convert a motion into a special proceeding, "all material requirements of the application have been satisfied other than form (*e.g.,* compliance with time limitations, *proper service on parties,* etc.)." Vincent C. Alexander, N.Y. C.P.L.R. § 103, *Supplementary Practice Commentaries,* C103:3 (emphasis added). Given that the Audax Shareholders argue that the court lacks personal jurisdiction over them because they have not been properly served, in this case, the two inquiries converge and the court need only consider whether the Audax Shareholders have been properly served. The court concludes that they have not.

█ Plaintiffs assert that they have provided sufficient service to the Audax Shareholders by sending them copies of their motion to enforce the Partial Judgment by certified mail, return receipt requested. Relying on sections 5225 and 5227 of the CPLR, Plaintiffs argue that these statutes allow notice of the proceeding "be served upon the judgment debtor . . . by registered or certified mail, return receipt requested," which they did. N.Y. C.P.L.R. §§ 5225, 5227. However, as the plain text of the statute makes clear, this notice provision refers only to the notice required *for judgment debtors,* in this case, Audax, and not to the Audax Shareholders, who would be the respondents in an action commenced pursuant to section 5225 or 5227. Indeed, although these provisions do not speak directly to the service of process required for respondents, the provisions that generally govern special proceedings require that the notice of petition used to commence a special proceeding be served upon respondents—here the Audax

Shareholders—"in the same manner as a summons in an action." N.Y. C.P.L.R. § 403; N.Y. C.P.L.R. § 103. Thus, Plaintiffs may not rely on the less stringent notice requirements that sections 5225 and 5227 set forth for the judgment debtor, a party who is not a respondent in a turnover proceeding and over whom, unlike respondents in such actions, the court "does not need to have personal jurisdiction." *N. Mariana Islands v. Millard,* 845 F.Supp.2d 579, 583 (S.D.N.Y.2012). To decide otherwise would allow Plaintiffs to circumvent personal jurisdiction and service requirements solely because they opted to seek enforcement of the Partial Judgment via a motion in federal court instead of via a special proceeding in New York state court or a separate proceeding in federal court, an outcome seemingly at odds with federal and state service requirements as well as notions of fundamental fairness. As a result, the court concludes that Plaintiffs must serve the Audax Shareholders in accordance with either the federal service requirements under Rule 4(e)(1), which simply allows for service pursuant to the applicable New York provisions relevant to service of process upon natural persons, here, CPLR §§ 308(1), (2), (3) and 312–a, or the distinct service requirements outlined in Rule 4(e)(2). *See Saregama,* 2012 WL 955520, at *1 (denying motion brought under Rule 69 pursuant to CPLR sections 5225 and 5227 without prejudice because "service of process on the Garnishees was insufficient under both federal and state law."). The court therefore turns to whether Plaintiffs have properly served the Audax Shareholders pursuant to the relevant federal or state law.

Rule 4(e)(2) states that an individual within a judicial district of the United States may be served either by "following state law for serving a summons" or by "doing any of the following": (1) delivering

a copy of the summons to the individual personally, (2) leaving a copy of the summons at the individual's dwelling with someone of suitable age and discretion, or (3) delivering a copy of the summons to an agent authorized by appointment or law to receive service of process. Fed.R.Civ.P. 4(e). CPLR § 308 allows for service of a natural person by (1) delivering the summons to the person to be served, (2) delivering the summons to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served, followed by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons to his or her actual place of business, as well as filing proof of service with the clerk of court, or (3) delivering the summons to a designated agent for service. N.Y. C.P.L.R. § 308(1), (2), (3). In addition, CPLR § 312–a allows for alternative service by mail and requires "a statement of service by mail and acknowledgement of receipt in the form set forth in subdivision (d) ... with a return envelope, postage prepaid, addressed to the sender." N.Y. C.P.L.R. § 312–a. As Plaintiffs do not argue that they complied with any of these provisions—and the court concludes based on the record before it that they have not—Plaintiffs have not effected proper service on the Audax Shareholders and their motion for enforcement of the Partial Judgment is denied without prejudice.

Although not touched upon by any of the persons involved in this action, the court notes that there appears to be some tension in this Circuit's case law as to whether Rule 69 motions invoking CPLR §§ 5225 or 5227 may be denied or whether the action must be dismissed when the court lacks personal jurisdiction over the transferee. *Compare Wasserman Media Group, LLC v. Bender*, 2012 WL 1506181, at *1 (S.D.N.Y. Apr. 26, 2012) (dismissing turnover action brought pursuant to Rule 69 motion because non-party garnishee contested personal jurisdiction and requiring petitioner to commence separate special proceeding) *with Saregama*, 2012 WL 955520, at *3 (denying without prejudice Rule 69 motion requesting turnover order because non-party garnishee was not properly served). In *Wasserman*, as in *Saregama*, the court indicated that motions brought pursuant to Rule 69 invoking CPLR § 5225 are not special proceedings. *Wasserman*, 2012 WL 1506181, at *1; *Saregama*, 2012 WL 955520, at *1. In both cases, moreover, the court found that the action could not proceed because it lacked personal jurisdiction over the non-party garnishee. *Wasserman*, 2012 WL 1506181, at *1; *Saregama*, 2012 WL 955520, at *2–3. Unlike in *Saregama*, where the court denied the motion without prejudice rather than dismiss the case, however, in *Wasserman*, the court dismissed the action, concluding that "a separate proceeding needs to be brought in order to acquire personal jurisdiction over any non-party garnishees." *Id.* Nonetheless, the cases may be reconciled, as there is an important distinction between lack of personal jurisdiction due to insufficient service of process and lack of personal jurisdiction due to the unavailability of long arm jurisdiction or minimal contacts with the forum state. Specifically, insufficient service of process may be corrected by merely re-serving the target of the service; in contrast, the unavailability of long arm jurisdiction or minimal contacts with the forum state are problems not as easily rectified. Although the nature of the jurisdictional defect in *Wasserman* is unclear, in *Saregama*, where the court denied the plaintiff's Rule 69 motion rather than dismiss the action, the sole jurisdictional defect was that the non-party garnishee had not been properly served.

In light of the important differences between a lack of personal jurisdiction due to insufficient service of process and lack of jurisdiction otherwise as well as the court's interest in enforcing its own judgments, *see RCA Corp. v. Tucker,* 696 F.Supp. 845, 850 (E.D.N.Y.1988), the court finds it prudent to allow Plaintiffs an opportunity to achieve proper service before dismissing the action. *See, e.g., Estate of Klieman v. Palestinian Auth.,* 467 F.Supp.2d 107, 110 (D.D.C.2006) (concluding that "none of the defendants have been served properly, but that plaintiffs should be given a further opportunity to properly effect service."); *King v. CAE Inc.,* 2012 WL 3127437, at *6–7 (D.Ariz. July 16, 2012) ("Having found that service of process was insufficient ... [w]e conclude that the most efficient course of action is to quash service of process and provide plaintiff with the opportunity to properly serve [defendant]."); *cf. Hamilton v. Garlock, Inc.,* 31 F.Supp.2d 351, 358 (S.D.N.Y.1998) (recognizing differences between lack of personal jurisdiction due to insufficiency of process from lack of long arm jurisdiction in its discussion of waiver, noting that "this is not a case where defendant is contesting personal jurisdiction on the ground that long arm jurisdiction is not available," and that the court "would be slower to find waiver by a defendant wishing to contest whether it was obliged to defend in a distant court.") (internal quotation marks and citation omitted). The court, of course, expresses no opinion at this time on the merits of Plaintiffs' fraudulent conveyance claims. It merely finds that outright dismissal of Plaintiffs' action is not warranted.

B. *Plaintiffs' Motion to Amend the Complaint*

▮ Plaintiffs seek to amend and/or supplement their complaint. Federal Rule of Civil Procedure 15(a) provides that any time after a responsive pleading is served a party must seek leave from the court to amend a pleading. Rule 15(a) specifically states that leave shall be freely given when justice so requires. FED.R.CIV.P. 15(a). However, in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court stated that denial of a Rule 15(a) motion may be appropriate in instances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Id.* at 182, 83 S.Ct. 227. The decision to grant or deny a Rule 15(a) motion to amend is committed to the sound discretion of the district court. *Id.*

▮ Federal Rule of Civil Procedure 15(d) provides that a party must obtain leave from the court to supplement a pleading setting forth transactions or occurrences or events that have happened since the date of the pleading sought to be supplemented. Rule 15(d) allows a party to supplement the complaint in order to present subsequent material that is related to the claims presented in the original complaint. *Argus, Inc. v. Eastman Kodak Co.,* 552 F.Supp. 589, 602 (S.D.N.Y.1982) (citing 3 Moore's Federal Practice ¶ 15.16[1], at 15176 (2d ed.1982)) (emphasis added). Matters stated in a supplemental complaint should have some relation to the claim set forth in the original pleading. 3 Moore's Federal Practice ¶ 15.16[3], at 15183 (2d ed.1989). As with Rule 15(a), the decision to grant or deny a Rule 15(d) motion is within the sound discretion of the district court. *Id.*

▮ As an initial matter, Plaintiffs request amendment to substitute two current trustees for the named plaintiffs who are no longer trustees. Audax has con-

sented to this request and the court grants it. More substantively, Plaintiffs seek leave to amend their complaint to name the Audax Shareholders as defendants and pursue individual state law claims against them. The court denies Plaintiffs leave to amend or supplement their complaint on this ground.

Plaintiffs' claims in the first amended complaint in the instant action were brought pursuant to ERISA and the LMRA, and arose from Audax's failure, along with other named defendants, to make contributions to the Funds as required by ERISA, the Trust Agreement establishing the Funds, and applicable collective bargaining agreements. Audax's subsequent transfer of assets to the Audax Shareholders—none of whom are currently defendants in this action—bears no relation whatsoever to Plaintiffs' claims regarding Audax's contributions to the Funds. Indeed, granting Plaintiffs' motion would require separate and considerable discovery into issues such as the Audax Shareholders' intent in effecting Audax's transfer of assets, their duties as managers of Audax's corporate assets, and the degree to which they exercised complete domination of Audax regarding the transfers, issues "wholly unrelated" to resolution of the claims included in Plaintiffs' first amended complaint. *See Scottish Air Int'l v. British Caledonian Group, plc*, 751 F.Supp. 1129, 1134 (S.D.N.Y.1990), *rev'd and remanded on other grounds*, 945 F.2d 53 (2d Cir.1991) (denying plaintiffs' motion to amend and supplement complaint because granting the motion "would require separate and considerable discovery ... [and] adding legal issues wholly unrelated to plaintiffs' current claims."); *see also Albrecht v. Long Island R.R.*, 134 F.R.D. 40, 41 (E.D.N.Y.1991) (leave to supplement complaint denied where the subsequent occurrence is unrelated to the matters alleged in the original complaint and would

result in confusion and delay); *Nottingham v. Peoria*, 709 F.Supp. 542, 544 (M.D.Pa.1988) ("[A] court may deny leave to file a supplemental pleading where that pleading relates only indirectly, if it all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts and related to a defendant not implicated in the original complaint.") Moreover, Plaintiffs' motion comes too late in these proceedings, as partial judgment has already been issued against Audax, the sole remaining defendant in the action. Indeed, this court has already denied Plaintiffs' prior request to amend their complaint to name the Audax Shareholders as defendants, noting that Plaintiffs' "proposed amendment in this case would both require Audax to expend significant additional resources and also significantly delay the resolution of the dispute." (Document No. 99.) Accordingly, Plaintiffs' motion seeking leave to amend and supplement their first amended complaint is denied. *See Scottish Air Int'l*, 751 F.Supp. at 1134. As the parties' remaining arguments appear contingent on the court's decision to grant Plaintiffs' motion to amend/supplement their complaint, the court does not address them.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion [140] is DENIED without prejudice to the extent it seeks to enforce the Partial Judgment by setting aside the approximately $3 million in fraudulent conveyances made by Audax to the Audax Shareholders. Further, Plaintiffs' motion to amend/supplement their complaint is GRANTED only to the extent it seeks to amend the complaint to substitute two current trustees in place of the named plaintiffs who are no longer trustees. In all other respects, Plaintiffs' motion to

amend/supplement the complaint is DE-NIED.

SO ORDERED.